# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

PAULETTA JOHNSON                    *

                                               *

     Plaintiff,                    *     Civ. Action File No._____

v.                                 *     **JURY TRIAL DEMANDED**

UNITED PARCEL SERVICE, INC.,
and UPS CAPITAL INSURANCE        *
AGENCY, INC.
                                         *

     DEFENDANT
_____  *

## VERIFIED COMPLAINT

Plaintiff Pauletta Johnson ("Plaintiff" or "Ms. Johnson") hereby files this Complaint against UNITED PARCEL SERVICES, INC., and its wholly owned and controlled subsidiary, UPS CAPITAL INSURANCE AGENCY, INC. In support of her Complaint, Plaintiff respectfully shows this Court as follows:

## THE PARTIES

1.    Defendant, United Parcel Service, Inc. ("Defendant" or "UPS") is a foreign profit corporation  with its principal office at 55 Glenlake Parkway, NE,

Atlanta, GA  30328. It may be served with process via its Registered Agent:
CSC of Cobb County, Inc, located at 192 Anderson Street, SE, Suite 125,
Marietta, GA  30060.

2.     Defendant UPS Capital Insurance Agency, Inc. ("Defendant" or
"Capital") is the wholly owned subsidiary of global corporate giant United
Parcel Service ("UPS"), and also has its principal place of business at 55
Glenlake Parkway, NE, Atlanta, GA  30328. Like UPS,  it may be served with
process through its Registered Agent: CSC of Cobb County, Inc, located at 192
Anderson Street, SE, Suite 125, Marietta, GA  30060.

3.     UPS is the largest, global public corporation specializing in the
delivery of packages in the world.  It has over 534,000 employees.  Capital
operates as a division of UPS, offering UPS clients and others various insurance
and other services. UPS controls Capital, which has hundreds of employees.  They
share various services, including the Human Resources, among others.  Defendants
are interconnected such that they are considered a "single" and/or "integrated"
employer and/or enterprise. Defendants collectively caused the unlawful actions
complained of below.

4.     Plaintiff Pauletta Johnson is a resident of White County, Georgia,
and resides on  Little River Road, Cleveland, GA 30528.  Plaintiff was an

employee of Defendants for approaching three decades until her termination on October 11, 2021.  At that time, Defendants, working together, terminated her at age 51 when her Christian faith prohibited her from injecting irreversibly into her body the experimental Covid Vaccine that had been mandated by Defendants.  Ms. Johnson was a highly qualified, outstanding employee with no discipline history whatsoever.

## JURISDICTION AND VENUE

5.     This court has jurisdiction because Plaintiff's claims present important federal questions over which this Court has jurisdiction under 28 U.S.C. § 1331,  42 U.S.C.  §2000e-5(f)(3)  (Title VII),    42  U.S.C.  §  12101  (the  Americans  with Disabilities  Act, As Amended ("ADAAA")) and 42. U.S.C. § 1983 and <u>Bivens v. Six Unknown Federal Narcotics Agent</u>s, 403 U.S. 388 (1971) (deprivation of rights under color of law).

6.     This Court has pendant jurisdiction over Plaintiff's Georgia state law claims pursuant to 28 U.S.C. § 1367.

7.     Venue is appropriate in this court for all of Plaintiff's claims pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. §2000e-5(f)(3), because Defendant is headquartered in Atlanta, Georgia and thus resides in this judicial district, Plaintiff resides in this judicial district, and all the events relating to her claims and damages

took place here.  In addition, this claim went through the EEOC process in Atlanta,

and Plaintiff has counsel in Atlanta.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.    Plaintiff filed a timely charge with the Equal Employment

Opportunity Commission ("EEOC") detailing her charges of discrimination under

applicable laws. A true and accurate copy of the Charge, incorporated Charge

Narrative, and Exhibits filed with the EEOC are attached hereto as Exhibit A and

are incorporated herein.

9.    Plaintiff received from the EEOC on November 8,  2022 a Determination

and Notice of Rights ("Right to Sue") providing her the right to bring her claims to court

within ninety (90) days of the date she received the Notice.  This Complaint is timely

filed within this 90-day period, and Plaintiff has complied with all other conditions

precedent to the institution of this lawsuit. A true and accurate copy of the Notice

of the Right to Sue is attached hereto as Exhibit B and is incorporated herein.

## INTRODUCTION AND FACTUAL SUMMARY

10.    Plaintiff Pauletta Johnson was a well-known, passionate,

exceptionally hardworking and dedicated leader who, at age 51,  last served

Defendants as the Director of Sales Enablement in Defendant Capital. Ms.

Johnson's extraordinary  UPS career spanned almost **28 years**, starting from an

entry level administrative position in Cincinnati, Ohio and ending with her last
Director-level position with UPS Capital in Atlanta, Georgia. She was with the
Atlanta office for over **five years.**  She took on many different roles during her
lengthy career with  UPS, in order to expand her breadth of perspective and
always to assist UPS wherever it most needed her excellent and ever-burgeoning
skill set.  She was a recognized and highly respected team player, a mentor to
many, had an unparalleled work ethic, and a "hands on" leadership attitude that
served exceptionally both her teams and Defendants UPS Capital and UPS as a
whole.

11.    Approaching three decades of loyal and stellar service to
Defendants, effective October 11, 2021, Ms. Johnson, at the age 51, was stunned
and devastated when UPS abruptly and unceremoniously ended her decades long
UPS career via an impersonal company-wide memo declaring that those who
remained unvaccinated in the face of a  UPS experimental COVID <u>vaccine
mandate </u>(a mandate applying to some, but not all, of its 534,000 or so employees)
would be terminated. She was thus forced into what is now known as the brutally
unfair and unlawful "Jab or Job" dilemma—with the "Job" being the loss of her
whole life's career, and the "Jab" being an experimental and known to be a
hazardous Covid vaccine derived from aborted fetal cells that violated strongly

her sincere Christian religious beliefs.[1]

12.    She requested a religious accommodation based on her  sincerely held religious beliefs.  As a Christian, her  religious beliefs include that all life is sacred,  and that the body is the Temple of God and must not be desecrated.  As she explained to her supervisors, her anti-abortion beliefs prohibited her from injecting into her physical body the experimental and unapproved COVID-19 Vaccine—which is known to be derived from aborted human fetal cells. See Exhibits D, D.1, Religious Accommodation Request ("RAR" or "Request").

13.    As the return to the office process began, she was only required to be in the office **one day a week**—on all other days she worked remotely from home and had been doing so very successfully for over a year and a half.  During the entire Covid "Pandemic," she was only required to come to the office three times in total.

14.    In her Religious Accommodation Request, Plaintiff proposed an accommodation to the vaccine that was derived from EEOC suggestions and would comply with her religious beliefs, while concurrently addressing any concern Defendant might have had regarding the spread of the virus.  She explained what could be done if she needed to be in the office:

---

[1] See Exhibit C, August 11, 2021 UPS Vaccine Mandate email.

In respect to an accommodation, I am willing to wear a mask in all public spaces whether mandated or not. Also, I will commit to self-test at designated interval prior to in person interactions at UPS facilities or sanctioned events at my cost and maintain results on my person. Furthermore, should other considerations outside of safety such as financial impact due to company healthcare benefits provided, I want to clarify I do not participate in the UPS health benefit plan as I am covered by my spouse under Tricare through his Air Force retirement.

15.    Other similarly situated employees of Defendants who also were required to be in the office only one day per week were allowed to work that one day by videoconference.  Plaintiff would have been happy to accept this accommodation, had it been offered or discussed.    It wasn't.

16.    After submitting her Request, Plaintiff went through UPS process after process trying to have a discussion about her proposed accommodation and why  it was extremely reasonable and would be no cost to UPS.   An accommodation for one day a week could not have been an undue hardship to the company.  In fact, her accommodation would have worked well even if she were required to be in the office five days per week.  Her whole department at that time was either fully remote or a hybrid of remote and one day a week in the office.  Defendants were doing accommodations for multiple people, including

those similarly situated to her.[2]

17.   All her efforts were  to no avail, however—UPS had none of the

legally required interactive discussions incorporated into its highly structured

entirely impersonal (impersonal for Plaintiff; maybe less so for others)

accommodation "process."  Despite exhaustive efforts by Plaintiff to have this

discussion, and to find out why her proposed accommodations were not

workable[3],  no UPS official would speak with her or answer her questions so that

an acceptable accommodation could be worked out. No one would identify for

her even one essential task that could not be done remotely.  Even her attempt to

use the in-house UPS Employment Dispute Resolution ("EDR") Process was cut

off midstream with no explanation given.  When she tried to determine why it

was suddenly cut off, she was told *unofficially* by HR's Erica Chisolm that this

was done because hers was a COVID Mandate religious accommodation case[4]

18.   At age 51, no other jobs were available for her at UPS or Capital,

despite her lengthy tenure.  She was unfortunately at "that age"—over 45.   UPS

---

[2] See as an example of discussions re accommodations for others in Exhibit E. See also
Exhibit F for a Verified TimeLine of the relevant events in this case.
[3] See, e.g., Exhibit E (Plaintiff's communications with HR and EDR Personnel) and  Exhibit F,
Verified Timeline.
[4] See Exhibit  F (Verified TimeLine); Exhibits D and E (Emails regarding Religious
Accommodation Request Denial and Denial of EDR Request).

had  a practice of "managing out the door" its executives who were in their 50's, and had through certain executives voiced a direction to "only bring forth candidates for management positions **under 45**."  Further, she had just had hip replacement surgery from a car accident (though, as a result of her stellar work ethic, she took only one day off for it).  With a religious exemption request that advocated for her religious accommodation rights, with being unwilling to undergo a medical procedure with the experimental Covid Vaccine, with being in her 50's, and with  having recent hip replacement surgery from a car accident, she was "regarded as" disabled by Defendants.  In consequence discriminated against, retaliated against and dismissed unceremoniously, without even a thank you after her decades of stellar service. She was offered no accommodation whatsoever.  See Exhibit D documents,  Religious Accommodation Request and related emails;  Exhibit E documents, Employment Dispute Resolution Request and related messages, Exhibit F, Verified TimeLine.  And no severance offer either.

19.   Defendants' conduct toward Plaintiff and others who asserted their religious, Constitutional, rights to bodily integrity, rights to privacy,  and other recognized rights is illegal in myriad ways and has destroyed Plaintiff's lifetime of work,  her anticipated, well-deserved retirement, and has caused  Plaintiff

enormous and largely irreparable emotional, financial, career, reputational and other injury.

20.    Plaintiff seeks all damages afforded by law, including without limitation, back pay, front pay, compensatory damages, punitive damages, interest, attorney's fees and costs for all the legal wrongs she has suffered at the hands of Defendants in an amount to be proven at trial.

## SUMMARY OF CAUSES OF ACTION

21.    This Complaint is for all damages Plaintiff has suffered as a result of Defendant's  religious discrimination, retaliation, and failure to accommodate her religious beliefs under **Title VII** of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e, et seq. ("Title VII"); Defendants' "regarding Plaintiff as" disabled under the American Disabilities Act (As Amended) ("**ADAAA**") and discriminating against her because of it; Defendant's deprivation of Plaintiff's Constitutional and other rights under color of law in violation of **42 USC §1983 and Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971)**; and related state law and other claims, including  intentional infliction of emotional distress; practicing medicine without a license and failure to obtain informed consent; and negligence.

22.    Plaintiff respectfully urges this court to hold Defendants

accountable, to right these wrongs, to compel Defendants to compensate Plaintiff for the many damages she has suffered and will continue to suffer, including without limitation the substantial bonuses and retirement pension Plaintiff would have received but for Defendants' actions, and to vindicate her, and by precedent, others, whose faith and Constitutionally-protected belief systems have been severely assaulted  by these Defendants as they mandated an extremely risky experimental Vaccine[5] that had only limited Emergency Use Authorization ("EUA") from the FDA[6] without obtaining informed consent, without offering any accommodation whatsoever, and without interactively discussing possible accommodations with  Plaintiff or others terminated due to their faith, as is required by law.  Although many were forced to compromise their faith to keep their job, feed their families and avoid financial ruin, Plaintiff's faith remained firm, though brutally assaulted and disrespected  by Defendants' actions  as explained below.

## **THE FACTS**

23.    Defendant Capital is a large, wholly-owned subsidiary of UPS that

---

[5] See Exhibit G, NIH article re "Negative Effect On Immunity" and other articles re Vaccine effects and medical consequences included.

[6] See Exhibit H, Amicus Brief. for The Republic, Inc. in U.S. Supreme Court case In Re MCP 165 v. OSHA, Case Nos. 21A244 and 21A247, 12/29/21 ("Amicus Brief.").

operates as a division of the well-known, mammoth global corporation, UPS, and is subject to UPS control.  Both Defendant UPS and  Defendant Capital acted in concert with regard to the actions described below  and will thus be referenced cumulatively as "UPS" or  "UPS/Capital" or Defendants, unless there is need to distinguish them.

24.    UPS is the largest delivery service in the world.

25.    Defendants employs has in excess 534,000 employees.

26.    Plaintiff  is a Christian and a member of a protected class under Title VII, based on her religion.

27.    Plaintiff  was, when terminated, 51 years old  and a member of a protected class under Title VII, based on her age.

28.    Plaintiff worked for UPS or Capital for a total of almost 28 years, from March 23, 1994 to October 11, 2021.

29.    Carole Tome was the CEO of UPS and Mark Robinson was the CEO of Capital at the relevant time.  Upon information and belief, Defendants are operated by a Board of Directors, corporate officers and others in leadership positions.  None of these decision makers are doctors or health care providers or medical specialists of any kind or otherwise authorized to direct medical care.

30.    Plaintiff was highly regarded, extremely hardworking,  very capable

and excellent at her job.  She was a mentor to many.  She has never received any write ups, warnings, or discipline in her almost 28-year career with Defendants. She won substantial bonuses and awards.  In a word, as an employee, Plaintiff was stellar.

31.     As a Christian, Plaintiff's sincere religious beliefs are based on the tenets of the Holy Bible as the inspired Word of God.  These include the strong belief that life is sacred and taking a life, through abortion or otherwise,  is morally wrong.  Also morally wrong is any involvement in an act that supports or uses abortion in any way.  Pursuant to her faith, the physical body is considered to be the Temple of God and is not to be desecrated in any way.

32.     The sincerity of Plaintiff's religious beliefs is indisputable and has not been challenged by Defendants.

### Background/History of Vaccine Mandate

33.     In 2020, the World Health Organization declared that a virus known as COVID-19 had spread across the world and caused a pandemic.

34.     In order to combat the declared pandemic, then President Trump sought to develop a vaccine to fight the virus.  Vaccine development is ordinarily a long, complex process, often lasting 10-15 years, and entails a combination of public

and private involvement.[7]

35.   In later 2020, the COVID-19 vaccine was hastily developed to address the declared pandemic (known as the "COVID Vaccine," the "Vaccine," the "Vax" or the "Jab").

36.   Notwithstanding the fact that vaccine development and initial testing normally takes 10 to 15 years, the COVID Vaccine was developed abnormally quickly and tested for only about two months before being unleashed on the U.S. population and the rest of the World. [8]

37.   In fact, the Vaccines were put together as part of a program dubbed "Operation WarpSpeed" —i.e., in record time--and were released to the public by the Federal Drug Administration ("FDA") pursuant to an Emergency Use Authorization ("EUA") in December 2020.

38.   Upon information and belief, no vaccine has ever been developed, tested, and authorized for even experimental use on such a vast public population in such a short time period.

---

[7] www.Historyofvaccines.org/vaccines-101/how-are-vaccines-made/vaccine-development-testin-and-regulation.

[8] See generally Exhibit H, Amicus Brief. See also, https://www.fda.gov/emergency-preparedness-and-response/mcm-legal-regulatory-and-policy-framework/emergency-use-authorization for relevant citations of authorities for EUA authority.

39.   The COVID Vaccine is well known to have been derived from aborted fetus cell lines.  This is undisputed.

40.   Pursuant to the Food, Drug and Cosmetic Act, 21 USC § 360 bbb-3, an EUA may only be granted when there is a declared national emergency, and, among other things, there is no alternative medication to address the hazards of the emergency. 21 USC §§ 360 bbb (c)(3).

41.   There were other effective treatments available to address the Covid Vaccine at the time the Pandemic was declared and when the Vaccine Mandate was issued by Defendant UPS.[9]  The Mandate applied to both UPS and Capital employees, as well as others, in specific corporate locations in the Atlanta area and elsewhere.

42.   The Vaccine is and was at all relevant times well known to both its promotors, including the FDA, CDC, HHS, NIT and others,  and its adversaries, to be associated with serious medical hazards and death, including  myriad significant adverse health events and conditions.

43.   Information demonstrating the significant risk of the Vaccine was at all relevant times  and is still available online on US government websites,

---

[9] Thus, for this and other reasons, the EUA was improperly granted.  See, e.g., Robert F. Kennedy, Jr., <u>The Real Anthony Fauci</u>, Skyhorse Publishing, 2021.

including the public websites of the Food and Drug Administration ("FDA"),

Center for Disease Control ("CDC"), Health and Human Services ("HHS"), the

National Institute of Health (NIH), as well as other websites,  and was at all times

publicly available during the time corporate decisions about mandating the

Vaccine were being made by Defendants. [10]

44.    The government and certain media aggressively in their broadcasts to

the public tried during the relevant time period to inflate the risk (and fear)

associated with the actual COVID-19  virus and minimize the substantial risks

associated with the Vaccine.  In fact, the COVID-19 virus illness had a survival

rate of approximately 98% or greater, depending on age and comorbidities, but

the COVID-19 Vaccine had a **high risk** of causing serious, adverse medical

events or death—**more than all of the vaccines kept track of on VAERS since

1990 _combined_.** [11] This information was available on the FDA/CDC websites,

and other websites, even while simultaneously the FDA/CDC and other

government actors were communicating the mantra that the Vaccines were "safe

---

[10] See, e.g.,  the Vaccine Adverse Event Reporting System ("VAERS"), www.vaers.hhs.gov; https://openvaers.com/COVID-data and/or https://vaersanalysis.info/2021/09/10/vaers-summary-for-covid-19-vaccines-through-9-03-2021/

[11] Additionally, VAERS numbers are widely recognized to be grossly underreported and could easily be 10X higher than even those listed. It is also reported that VAERS data is being regularly deleted.  See https://Vaers analysis.info/Post of June 10, 2021.

and effective."

45.    Even more risk information has been revealed over time since 2021, including information only released due to successful Freedom of Information Act ("FOIA") and other lawsuits against the FDA and/or the CDC or others, demonstrating that the Vaccines are and were extremely hazardous at the time Defendant was demanding that each of its thousands of employees inject  the EUA Vaccine into his or her  body or be fired.[12]

## THE VACCINE MANDATE

46.    On August 11, 2021, UPS Corporate Communications sent an email to Plaintiff.  Upon information and belief, this email was sent to  many, but not all,  employees regarding "UPS Return to Specific U.S. Offices on Sept. 7." This

---

[12] It has  been admitted by   Janine Small, Pfizers's President of International Markets,   that the Vaccine was actually never developed or tested to curb the transmission of the COVID virus. Supposedly, Pfizer was never  asked to do that.   See, e.g. CapCon article, October 14, 2022. "Pfizer Admits: Covid Vaccine was never meant to stop transmission;" www.Michigan/Capital/Confidentiality.com.   Despite intense and regular government and Pfizer CEO declarations urging that getting the Vaccine would stop the spread of the COVID virus, and thereby protect fellow employees, friends and loved ones from catching the virus and becoming ill or dying, the Vaccine was not made or tested to "stop the spread."   Media, government and other statements to the effect the Vaccine would stop the spread of the virus were completely false, and now there are more vaccinated with the COVID Vaccine suffering and dying in hospitals and other places than unvaccinated patients.  It has been found that actually the Vaccine destroys the immune system and thereby makes an individual more, not less, susceptible to catching COVID or other viruses and diseases.  Many other adverse medical consequences of the Vaccine have also been confirmed since 2020. See Exhibit G, Vaccine Medical Consequences Documents.

email indicated that Defendants were moving toward a "Flex Work" program and **all employees in certain corporate locations**, but not all locations, **were required to be vaccinated with the Covid Vaccine**.[13]

47.    Although Atlanta area corporate employees were required to be vaccinated, Atlanta "Operations" department employees were not required to be vaccinated, even though they worked side by side with other UPS workers and interacted directly with other workers and customers.[14]

48.    The Operations department is Defendants' front line workforce and represents the bulk of its workers.  Operations employees are those, among others, who actually sort and deliver packages and interact with the public directly. [15]

49.    Upon information and belief, Defendant and President Biden and other governing agencies  and pharmaceutical companies partnered together to get the Vaccine distributed all over the world. [16]

50.    Interestingly, the Vaccine had already been purchased by the

---

[13] Exhibit C, August 11, 2021 UPS Vaccine Mandate email.
**[14]**   Exhibit I, AJC Article dated August 16, 2021.; Exhibit J  Plaintiff's Notes re Vaccine Mandate Inconsistent and Erratic Application; Video of Operations working closely during the Pandemic also available.
**[15]** See Exhibit I.
[16] See, e.g., Exhibits I and K, AJC and other articles.

government *before* it was even approved for Experimental Use by the FDA.[17]

51.     This partnership with Biden, government and pharmaceutical companies resulted in enormous profits to Defendants.[18]

52.     However, the Vaccines were so hazardous that the FDA and/or CDC refused to release hidden information in their possession showing, e.g., the serious adverse health events and death caused by the Vaccines.

53.     Documents and data the FDA, CDC, NIH and/or the HHS refused to disclose to the public included information and documents supplied by Pfizer and other Vaccine manufacturers and also the FDA/CDC's own data resulting from, among other sources, the V-Safe technology.  A V-Safe app was provided to vaccine takers as a vehicle to report to the FDA/CDC specified adverse health events. ICAN obtained CDC V-Safe data showing extreme adverse health consequences to millions of vaccine recipients out of over 10 million V-Safe users that submitted data.[19]

54.     Notwithstanding, in 2021, even as Vaccine mandates were being

---

[17] See Exhibit L.1, US Commits to Buying Millions of Vaccine Doses.
[18] See Exhibit M, UPS 4Q 2021 Earnings and Profits.
[19] See Exhibit Q.   See also, https://www.prnewswire.com/news-releases/cdcs-covid-19-vaccine-v-safe-data-released-pursuant-to-court-order-301639584.html

demanded by President Biden[20] and being implemented by corporations around

the country, the FDA/CDC public VAERS  reports, among others, were showing

an extraordinary rise in COVID-Vaccine related deaths and adverse medical

events.[21]  This information was available to the public, including Defendant's

management and employees,  openly on the FDA/CDC website via VAERS and

on other websites disseminating the information and conclusions of highly

credentialed physicians, researchers and scientists at the time Defendants was

contemplating issuing a Vaccine mandate.

54.     Also, various other medications and treatments successful at treating

illness brought on by the COVID-19 virus were being communicated by various

highly credentialed physicians, researchers and scientists on publicly available

websites and other media.[22]

56.     Notwithstanding this information, President Biden and other

influential government officials (e.g., Dr. Anthony Fauci, Director of the National

---

[20] Although he had been earlier demanding that everyone get a vaccine, President Biden announced his intention to impose a national vaccine mandate on September 9, 2021. *See, e.g.*, Kevin Liptak & Kaitlan Collins, *Biden Announces New Vaccine Mandates that Could Cover 100 Million Americans*, CNN (Sept. 9, 2021), https://www.cnn.com/2021/09/09/politics/joe-biden-COVID-speech/index.html  ("'We've been patient, but our patience is wearing thin, and your refusal has cost all of us,' Biden said, his tone hardening toward Americans who still refuse to receive a vaccine despite ample evidence of their safety and full approval of one . . . .") .  See also Exhibit P,  Biden Fact Sheet July 29  2021.
[21] See Exhibit
[22] See, Robert F. Kennedy, Jr.,  The Real Anthony Fauci, Skyhorse Publishing, 2021.

Institute of Allergies and Infectious Diseases, part of the National Institute of

Heath ("NIH") throughout 2021 continued to heavily push everyone to get

vaccinated with the COVID-19 Vaccine and pressured private employers like

their partnered Defendants (large corporations over 100 employees) to mandate

the Vaccine.

57.     In April 2021, President Biden paid companies for mandating the

Vaccine via tax credits.

58.     Throughout 2021, the President and Defendants partnered together to

deliver the Vaccine all over the world.[23]

59.     Throughout 2020 and 2021, as a result of the partnership between and

among the President, government agencies,  pharmaceutical companies, and

Defendants, Defendants were paid billions of dollars to deliver the Vaccine

throughout the United States and around the world.[24]

60.     The Operations personnel were highly involved in that process.

61.     Defendants allowed Operations personnel to interact freely with other

employees and customers in close proximity without the Vaccine, while corporate

employees in specified buildings were required to be vaccinated, regardless of

---

[23] See Exhibit I, AJC and other  articles re partnership, UPS visiting White House.
[24] Exhibit M,  UPS Earnings Statement 2021.

how often they had to come to the office or interact with others.[25]

62.     According to UPS, the reason the Operations personnel were allowed to remain unvaccinated while corporate employees were required  to be vaccinated no matter how little time they needed to be in the office was because "Those front-line employees don't need to be vaccinated because those operating facilities 'have been safely staffed in person since the beginning and throughout the pandemic.'" [26]

63.     Plaintiff had been working almost entirely remotely prior to August 2021. Between March 2020 and August 2021, she had only come into the office only three times.

64.     The use of Zoom, Teams and other video-conferencing technology became widely used during this time, and was very effective.

65.     Plaintiff used it regularly and successfully to communicate with others without the need to be in their physical presence.

66.     As stated in the August 11, 2021 email to myriad employees, Defendants intended to bring employees back under a "Flexwork" program by

_____

[25] Exhibit I, AJC article of August 16, 2021 re UPS Frontline Workers Exempted from Vaccine Mandate.
[26] See Exhibit I,  AJC article of August 16, 2021 re UPS Frontline Workers Exempted from Vaccine Mandate.

September 7, 2021.[27]

67.     Plaintiff was advised in the August 11, 2021 email that those with

employees with religious objections could apply for an accommodation.

68.     Plaintiff was  injured in a car accident on August 10, 2020.

69.     As a result of the car accident, Plaintiff required hip replacement

surgery.  She took one day on August 17, 2021 to have this surgery and returned

to remote work the very next day.

70.     On August 23, 2021, the FDA announced that it had approved the

Pfizer BioNTech  Covid Vaccine.

71.     However, the Vaccine was only approved under the label Comirnaty.

72.     Comirnaty was not available in the United States.[28]

73.     The Vaccine available in the United States was only approved

pursuant to a Emergency Use Authorization ("EUA").

74.     Federal laws protect pharmaceutical manufacturers from liability for

adverse reactions and death resulting from the Vaccine when authorized under an

FDA EUA.[29]

---

[27] Exhibit C.
[28] Exhibit H, Amicus Brief.
[29]  See 42 U.S. Code § 300aa–22;  see also https://www.cnbc.com/2020/12/16/covid-vaccine-side-effects-compensation-lawsuit.html

75.     Although on August 23, 2021, the FDA issued a press release saying

that it had approved the Vaccine, acknowledging the approval was so people

would feel more comfortable taking the vaccine, the only vaccine approved was

that under the Comirnaty label—which was not generally available in the United

States.[30]

76.     The FDA has admitted that the approved Covid Vaccine (Comirnaty)

and EUA Vaccine (BionNTech) are "legally distinct"[31]  and there is no evidence,

and never has been,  that the vaccine even stops the transmission of the virus.[32]

77**.**     The U.S. Supreme Court has recognized that, once a Covid-19

Vaccination is injected, the injection cannot be undone**.** It does not stay with an

employee recipient just when she is at work.  It travels with the recipient always,

at home, at work, and everywhere else. [33]

78.     The one vaccine label approved by the FDA was not available in the

---

[30] See Exhibit H, Amicus Brief for The Republic, Inc. in U.S. Supreme Court case In Re MCP 165 v. OSHA, Case Nos. 21A244 and 21A247, 12/29/21 ("Amicus Brief.").   Upon information and belief, the approval of a vaccine unavailable was just part of an intentional design to try to drive up the numbers of vaccinated.

[31] Exhibit H, Amicus Brief.

[32] For example, according to https://www.fda.gov/vaccines-blood-biologics/qa-comirnaty-covid-19-vaccine-mrna, even the Comirnaty vaccine is not known to reduce the transmission of the Covid virus—it is only "hoped" that it will  reduce transmission of the Covid virus. "[T]he scientific community does not yet know if Comirnaty will reduce …transmission."  See also, Exhibit H, Amicus Brief.

[33] See National Federation of Independent Businesses v. Dept. of Labor, 142 S.Ct. 661, 668 (2022).

US during 2021 when mandates were issued, and none of the vaccines for Covid could be said to "stop the spread."  The only available Vaccine at all times relevant was the EUA Vaccine.

79.    At the time of the vaccine mandates in 2021, employers were mandating the vaccines, despite numerous risks, they were apparently thinking that the Vaccines would stop transmission, as that is what numerous federal officials, including President Biden, repeatedly misrepresented.

80.    Upon information and belief, neither Pfizer nor any other Vaccine manufacturer  issued a statement correcting the misimpression that the Vaccine would "stop the spread," even though they knew there was no basis for this oft-repeated declaration in the media by Biden et al and many others.

81.    A Pfizer executive admitted at the European Parliament's Covid-19 Committee that Pfizer never tested to determine whether the Vaccine stopped transmission or not and still does not know whether it does or so or not.[34]

82.    There is a great deal unknown about even fully approved label Covid Vaccines.   Even less is known about vaccines with only an EUA approval.  Consequently, the less known about a vaccine, the higher the risk of an unknown

---

[34] https://www.michigancapitolconfidential.com/news/pfizer-admits-covid-vaccine-was-never-meant-to-stop-transmission.

adverse side effect.  This is why testing of vaccines prior to their release usually goes on for 10-15 years.

83.    What is known now, and was known in 2021, is that, at the time UPS was mandating the Vaccines, according to VAERS, the covid Vaccine caused more adverse medical events than all other vaccines *combined* since VAERS tracking started in 1990.[35]

84.    Upon information and belief, Defendants did not share this information with their employees.  Rather, even while people were dying in mass numbers from the Vaccine, according to public FDA/CDC/HHS records, Defendants were firing a multitude of loyal employees, including Plaintiff,  who could not, for religious or other reasons, take the hazardous Vaccine.  At all times relevant, despite public information available to the contrary, Defendants falsely maintained that "the Vaccine is the best way to stop the spread and ensure the health of our employees."[36]

### INFORMED CONSENT

85.    Upon information and belief, other than perhaps in Nazi Germany, no American has ever been mandated to take an *experimental* vaccine—until the

---

[35] http://vaersanalysis.info/2021/10/01/vaers-summary-for-covid-19-vaccines-through-9-24-2021/
[36] Exhibit C.

mandates advanced by President Biden, the FDA, and other government actors in 2021 and by employers like Defendants as a result of such government compulsion.

86.    Federal law prohibits employers and others from mandating an experimental vaccine.[37]

87.    Congress has not stated that Covid Vaccine Mandates are legal.  In fact, Congress has exempted itself from Covid Vaccine Mandates.

88.    The State of Georgia, by Executive Order of Governor Brian Kemp has stated that:

> "Any "Vaccine Passport Program," which for the purposes of this Order shall mean any program that would determine the COVID-19 vaccination status of any individual in order to permit or prohibit such individual access to services, property, employment, or other rights or privileges based on such status, would restrict individual liberty  and force Georgians into disclosing private medical information; ***"
> And would not be permitted by the State of Georgia.[38]

---

[37] https://www.statnews.com/2021/02/23/federal-law-prohibits-employers-and-others-from-requiring-vaccination-with-a-covid-19-vaccine-distributed-under-an-eua/; 21 U.S. Code § 360bbb–3; 21 CFR § 50.25,  https://www.ecfr.gov/current/title-21/chapter-I/subchapter-A/part-50/subpart-B/section-50.25

[38] https://gov.georgia.gov/press-releases/2021-05-25/gov-kemp-issues-executive-order-prohibiting-covid-19-vaccine-passports  May 25, 2021.

89.     The Vaccine is a medical procedure.[39]

90.     Informed consent is required for all medical procedures under both Georgia law and under federal law, especially experimental ones.

91.     Even doctors cannot insist a person have a medical procedure, even if the doctor, educated in medicine, wholeheartedly believes it will save the patient's life.[40]

92.     Defendants have no legitimate authority, medical knowledge, experience or credentials to mandate vaccines.

93.     Everyone who takes an experimental vaccine is participating in a study of sorts, as adverse reactions are required to be reported to government institutions.

94.     All adverse reactions to COVID-19 Vaccines were to be reported to the FDA/CDC website VAERS,  and the FDA/CDC was supposed to be monitoring this data.

95.     Additional monitoring was supposed to be done by V-Safe, a phone

---

[39] See National Federation of Independent Businesses v. Dept. of Labor, 142 S.Ct. 661, 668 (OSHA ETS Covid Vaccine Mandate illegally attempts to "induce individuals to undertake a medical procedure that affects their lives outside the workplace."

[40] See Exhibit R, Doctors Hospital of Augusta v. Alicea, 788 S.E.2d 392, 299 Ga 315 (2016).

app that allowed the user to report adverse vaccine reactions.  This information

was supposed to be reported by Vaccine recipients and monitored by the CDC,

but the CDC withheld this information from the public until it was sued

repeatedly to release it.  V-Safe data was finally released pursuant to court order

after ICAN sued pursuant to the Freedom of Information Act ("FOIA").[41]

96.     Death and multiple adverse reactions to new drugs, in the past,

stopped a drug from being marketed or used.

97.     With the Covid Vaccine, however, literally tens of thousands of

deaths and debilitating adverse medical events were known to be associated with

the EUA Covid Vaccine by the FDA, CDC in 2021.  Presumably, since much of

it was on government websites and publicly available,  President Biden and Dr.

Fauci—and their corporate partners, including Defendants—knew this

information yet continued to insist the Vaccine was "safe and effective,"  and

would "stop the spread." They continued to demand, then and even now,  that

everyone--millions and millions of Americans and everyone else in the world,

inject it into their bodies.  Defendants demanded on August 11, 2021 that all their

employees inject themselves with this experimental and hazardous drug known to

---

[41] See Exhibit Q, ICAN V-Safe data showing millions experienced often severe negative  medical consequences
after taking the Covid Vaccine;  See website:
https://foiaproject.org/case_detail/?title=on&style=foia&case_id=33564.

be developed via aborted fetal cells as a condition of employment.

98.    The  Vaccine was, and is, extremely hazardous and has resulted in the deaths of tens of thousands, if not millions,  of people around the world.

99.    CDC V-Safe data withheld by the CDC but obtained through a FOIA lawsuit shows of 10,108,273 vaccine users of the V-Safe App, 6,458,751 reported negative health impacts.[42]

100.    In fact, as the manufacturers of the Vaccine well knew, the Vaccine had not been tested to determine whether it stopped the spread of anything.

101.    Upon information and belief, formal trials of the Vaccine of only two months took place before the Vaccine was approved under an EUA.

102.    Upon information and belief, no one can be legally forced to take an experimental vaccine, which is all that was available on October 11, 2021 when Defendants mandated that Plaintiff and thousands of other employees do so and when Plaintiff was terminated October 11, 2021.[43]

103.    Under a Christian religious view, no one should inject into his/her body a substance with a substantial chance of injuring the physical body—which is the Temple of the Lord.

---

[42] Exhibit Q.
[43] See Exhibit H, Amicus Brief.

## RELIGIOUS ACCOMMODATION REQUEST PROCESS

104.   On August 30, 2021, Plaintiff submitted to UPS Human Resources her Religious Accommodation Request ("RAR")  in which she explains her understanding of her rights to an accommodation under the law and EEOC directives.  She there proposed an accommodation that would cost UPS nothing, and would cause UPS no undue hardship.[44]

105.   All Capital employees are remote or hybrid—meaning  there is only sporadic need to be in the office.[45]

106.   On September 9, 2021, President Biden formalized the significant pressure he had been exerting on large corporations, among others, ever since the Vaccine was authorized under an Emergency Use Authorization ("EUA") in December 2020.  President Biden in his Speech of that date said he was ordering that companies with more than 100 employees must *mandate* vaccinations for *all* their employees.[46]

107.   Upon information and belief, Defendants did not bother to check the VAERS data or other reports outside of mainstream media that demonstrated

---

[44] See  Exhibit E.1, Religious Accommodation Request. See also, Exhibit  F, Verified Timeline of Events.
[45] See Exhibit E, Emails relating to RARs.
[46] See Exhibit N (Biden Sept. 9, 2021 Speech), and Exhibit P, (Biden Fact Sheet dated July 29, 2021).

extremely reputable doctors and scientists had concluded that the Vaccines were extremely risky and were causing significant medical injury and death. [47]

108.   Alternatively, if Defendants did check the VAERS and other information showing that the Vaccines carried a high risk of injury or death, Defendants' Leadership nonetheless decided to inflict without disclosure the risk of this Vaccine on all their thousands of employees, given, among other things, the extreme pressure by Biden et al, and the fact of Defendants' significant profits from partnership with government and pharmaceutical companies to distribute the Vaccine to the entire world.

109.   Upon information and belief, Defendants did no due diligence of their own to determine whether it would be safe and reasonable to force all of their thousands of employees to be injected with the Vaccine, but instead relied on the pressure exerted by Biden, parts of the CDC and FDA, Dr. Anthony Fauci[48], and the mainstream media, which all regularly chastised those reluctant or refusing the Vaccine injection, including those who refused it for religious, medical or other protected reasons, and attempted to instill into the entire world population

---

[47] See, e.g., The Death Report, by Dr. V. Zelenko, a Nobel Prize nominee.
[48] See, Robert F. Kennedy, Jr., <u>The Real Anthony Fauci</u>, Skyhorse Publishing (2021),

extreme fear of a disease that had a recovery rate of greater than 98%[49], falsely advocating that the Vaccine was the *only* way to escape the serious, deadly COVID-19 disease.

110.   Although Defendants Leadership was not comprised of doctors or other medical personnel, health care providers or statisticians, none of these credentials were necessary to obtain the concerning information on VAERS published openly by the FDA/CDC, as well as on many other websites and by multiple well-credentialed authorities, showing how hazardous the Vaccines were.

111.   However, having no medical background, Defendants also had no legitimate authority to even recommend, much less mandate, a medical procedure to thousands of employees about whom they knew nothing—nothing about their medical or religious status or other circumstances which would naturally affect a decision regarding whether a medical procedure like an experimental Covid Vaccine was appropriate.

112.   Injecting a solution into her body knowingly derived from aborted

---

[49] See Exhibit D, VAERS Analysis showing the number of COVID Vaccine-related reported deaths by date since the date the vaccine became available in 12/2020 through 9/2022.  See generally, www.vaersanalysis.info.

fetus cell lines was and is an abomination and morally reprehensible to Plaintiff and many other Christians.

113.   Injecting an experimental and unknown solution into her body known to be the likely cause of myriad adverse health consequences or death is an abomination and morally reprehensible to Plaintiff and many other Christians.

114.   By August 11, 2021, given the Presidential, media, and governmental coercion  to mandate vaccination, and, upon information and belief, having a close and intertwined relationship with the government and/or President Biden, Defendants decided that many, but not all, of its 534,0000 or so employees would be required to submit to this EUA Vaccine or be terminated.

115.   Defendants made clear their employees that taking the vaccine was a *a condition of employment* and required everyone to be vaccinated **by October 1, 2021.** [50]

116.   Upon receiving this declaration, Ms. Johnson had many questions which she diligently tried to get answered from appropriate Defendant management and HR personnel.  No one was responding to or answering her questions, however. [51] Plaintiff also has recordings of her attempts to have an

---

[50] Exhibit C.
[51] See Exhibit E and F.

interactive discussion regarding accommodations to the Vaccine Mandate which will be submitted at a future date.

## BIDEN COMPULSION TO MANDATE VACCINE

117.   As perhaps the climax of Biden's ongoing campaign to compel  as many people and corporations as possible to take and, if possible,  mandate the Vaccine, on September 9, 2021, President Biden gave a speech to the people and corporations of the United States, to make clear he was not going to put up with the unvaccinated anymore.  The speech was clearly designed to label "all" the unvaccinated as outcasts and unacceptable, regardless of the reason, to generate open hostility toward them, and to level disrespect toward them.  They were to be viewed as pariahs who were causing trouble for everyone else—regardless of the reason they were not vaccinated.  As Biden explained:

> "**Many of us are frustrated** with the nearly 80 Million Americans who are still not vaccinated, even though the vaccine is safe, effective, and free….**This is a pandemic of the *unvaccinated*…**nearly 80 million Americans…have *failed* to get the shot.
>
> "The vast majority of Americans are doing the *right thing*.  [That nearly 80 million is a **25 percent minority**.]  That 25 percent **can cause a lot of damage—*and they are*.
>
> "***The unvaccinated* overcrowd our hospitals,** are overrunning the emergency rooms, and intensive care units, l**eaving no room for someone

35

with a heart attack, or [pancreatitis], or cancer….

"But what makes it i*ncredibly more frustrating* is that we have the tools to combat COVID-19, and a distinct *minority* of Americans— supported by a distinct minority of elected officials—**are *keeping us from turning the corner*….**

"This is not about freedom or personal choice….

"The Department of Labor is developing an emergency **rule to require all employers with 100 or more employees, that together employ over 80 million workers, to ensure their workforces are fully vaccinated or show a negative test at least once a week.**

"The bottom, line:  ***We're going to protect vaccinated workers from unvaccinated co-workers.***

"I will sign an executive order that will  now require all executive branch federal employees to be vaccinated—***all***.  And I've signed another executive order  that will require federal contractors to do the same….

"If you want to work with the federal government and do business with us, get vaccinated.  **If you want to do business with the federal government, *vaccinate your workforce*….**

"The Department of Labor will require employers with 100 or more workers to give those workers paid time off to get vaccinated…..

"My message to unvaccinated Americans is this:  What more is there to wait for?  What more do you need to see?...

"The vaccine has FDA approval.[52]

---

[52] This is actually misleading.  The vaccine available in the United States  at that time had not been FDA approved for anything other than Experimental Use.  See Exhibit H, Amicus Brief.

"We've been patient, but **our patience is wearing thin. And your refusal has cost all of us.** *So please **do the right thing**.  But just don't take it from me; listen to the voices of unvaccinated Americans who are lying in hospital beds, taking their final breaths, saying, "**If only I had gotten vaccinated**.: "If only."*

**"It's a tragedy.**

*"For the vast majority to have gotten vaccinated, **I understand your anger at those who haven't gotten vaccinated.**

*"For any parent, it **doesn't matter how low the risk** of any illness or accident is when it comes to your child or grandchild.  Trust me.  I know.---*

**"Get your teenager vaccinated….**

*"Any teacher or school official whose pay is withheld for doing the* **right thing**, *we will have that pay restored by the federal government 100 percent.  I promise you I will have your back….*

*"Because of our vaccination program…we've had record job creation for a new administration, economic growth unmatched in 40 years.  **We cannot let the unvaccinated [un]do this progress—undo it, turn it back**.*"[53]

### ACCOMMODATION REQUEST ORDEAL

118.   On August 30, 2021. Plaintiff  submitted her request for a religious accommodation to Defendants as directed. [54]

119.   On September 9, 2021, Plaintiff was involved in discussions  with a

---

[53] See Exhibit N, Biden September 9, 2021 Speech to the nation. Emphasis added.
[54] See Exhibit.D, Johnson Request for Religious Exemption; Exhibit F, TimeLine.

sales manager regarding accommodation requests from three of Defendants' sales

representatives from Plaintiff's Department who had asked to work remotely.

Ultimately, all three requests were granted. [55]

120.   On September 13, 2021, Plaintiff's supervisor, Defendant Capital's

Vice President,  Keith Cox, informed Plaintiff that he had received a call from

HR GEO Services regarding her Religious Accommodation Request ("RAR") .

HR asked if Plaintiff could work remotely **until January 15, 2022.**

121.   Cox responded that Plaintiff is a leader of people and therefore has to

be in the office one day per week.

122.   On September 14, 2021, Plaintiff was advised by Defendant UPS

HR's Paul Casaus in a conversation regarding an accommodation request from

one of Plaintiff's subordinates that the ability to work remote is part of

Defendants' decision-making process regarding granting accommodations.

123.   Plaintiff later that day received a call while she was driving from

Corporate HR GEO Services who recited to Plaintiff a scripted **denial** of her

Religious Accommodation Request.

124.   Later Plaintiff asked why her RAR was denied, and was told "because

---

[55] See Exhibit E.2.  Defendants later reversed their decision grant to all these employees an
accommodation.  And then later again, reversed that decision and allowed an accommodation.

you cannot be 100% remote."  Plaintiff continued to ask, "What are the reasons for not accepting my recommended accommodations?"  The impersonal caller responded, "I don't know.  That information should be provided by the Human Resources Service Center (HRSC) when it is closed out."    To no avail, Plaintiff again stated, "I do not understand how this can be a burden when I am agreeing to test prior to any in-person; that I would pay for, wear a mask, whether mandated or not.  Also, I am not on UPS healthcare, so there is no burden."[56]

125.   Defendants' caller  could not answer any of her important questions and said that the "Denial will state" why Plaintiff was denied.

126.   On September 15, 2021, Plaintiff received electronically official notice that her RAR had been denied and that "local management has already or will contact you soon to discuss the decision  and any applicable next steps."[57]

127.   Plaintiff promptly submitted a request again asking for the reason for the denial and why her proposed accommodations were not addressed.  She asked that the reasons be put in writing and sent to her immediately.

128.   On September 18, 2021, Plaintiff received information that her HRSC Religious Accommodations case had closed.  No additional information was

---

[56] See Exhibit F, Verified Timeline.
[57] Exhibit E.3.

provided.  Nothing about her sincerely held religious beliefs.  Nothing about her proposed accommodations.  Nothing.

129.   On September 21, 2021, her supervisor, Keith Cox, VP of UPS Capital Global Sales,  informed Plaintiff that if any of her reports had been approved to work remote, that such approval needed to be rescinded and the employees needed to be told they could not work remote based on Defendants hybrid work plan.  This in essence triggered the denial of Religious Accommodations for five of Plaintiff's reports.

130.   On September 22, 2021, pursuant to Defendants' guidelines, Plaintiff submitted an Employee Dispute Resolution  ("EDR") Request to Defendants' inhouse dispute resolution system, stating that the dispute was for Defendants' Discrimination based on her sincerely held religious beliefs.  She requested acknowledgment of her religious beliefs and approval of her proposed reasonable accommodations.[58]   Plaintiff received nothing.

131.   This is what the EDR process is supposed to involve:[59]

  o Open Door
  o Facilitation – this is step denied Plaintiff and where Covid 19
     Religious Accommodation Requests started
  o Peer Review or Mediation
  o Mediation if employee chooses

---

[58] See Exhibit E.3.
[59] See  Exhibit E.4., EDR Program Guide.

    o  Arbitration

132.   On September 23, 2021, in connection with  discussions regarding an accommodation request by a sales employee  in her department, Plaintiff got via email the following input from HR regarding the appropriate way to handle RARs. Specifically, Justin Farmer, HR Geo Services Manager, advised:

> Employees with religious accommodation requests:
>
> - These are very sensitive cases and need to be handled as such
>   - To be in compliance, we cannot hold these employees to the same RTO rules as others without religious accommodations. **The main question is "Are there any specific job tasks that they cannot perform from home, virtually or through Zoom? If so, we need to list those tasks". In the event that a lawsuit is filed, we will need to provide this list of tasks.**
> - HR needed to have similar conversations with other Directors who were insisting they needed to return to office, in order to ensure they were in compliance.
> - HR has approved a number of other people, in similar roles, to work remotely until January 15th, 2022.
> - The religious accommodations are not permanent. They are approved through peak, and will be reconsidered in January. The employee may choose to re-apply and there may be new expectations  a t that time.
> - For those that have been approved already and we are looking to rescind:
>   - The process is to document the change in the system, deny it, and **then the employee can go through the appeal process via the EDR.**

- Lastly, he stated that the BP's HR dept decides whether or not to terminate an employee after 10/1.[60]

133.   **This important email also confirmed that RAR's, when declined, should go through the EDR process:**  Plaintiff discussed the above bullet points with her supervisor Keith Cox.  This resulted in removing the previous recission of approval and allowing three sales team specialists to work remotely.[61]

134.   On September 27, 2021, Plaintiff had the following conversation with Erica Chisholm, Employee Relations Investigations Manager:

- Erica asked if Plaintiff had face to face contact with customers (Plaintiff indicated **she did not**. Plaintiff's only in-person event would be one day a week in office, where there would be potential interaction with employees following social distancing guidelines and any reasonable accommodation).

- Plaintiff asked how the EDR process works, to confirm her understanding. (**Erica did not know** since this was COVID.) Plaintiff questioned why the EDR process would be different for COVID.  (**Erica had no answer**.)

- Plaintiff also asked if by going through EDR process, Plaintiff would be terminated (**Eric did not know,** but would find out, she said).

---

[60] See D.11.
[61] See Exhibit D.5 (9/23 Email from Anna Laurenza to Plaintiff) Emphasis added).

135.   On September 29, 2021, Plaintiff received email confirmation that he EDR request was denied at the facilitation phase.  Plaintiff responded with asking why was she being denied the full EDR process?  The email indicated the **case was closed**.[62]

136.   That same day, UPS held a Briefing regarding the Vaccination requirement process and employee off-boarding.

137.   The next day, September 30, 2021, Plaintiff was contacted by Erica Chisolm who reported the Defendants had reviewed her RAR letter and were not disputing her sincerely-held religious beliefs.

138.   In that conversation, Erica advised that Plaintiff's accommodation had been **denied** because there were tasks required to do her job and Defendants were not able to accommodate.

139.   Plaintiff asked Erica to confirm which tasks could not be performed based on Plaintiff's accommodation proposals.  **Erica had no answer.**

140.   Plaintiff also asked Erica why the whole EDR process that was supposed to be available to all employees was not being followed.  Erica indicated that Covid Religious accommodations requests were terminated at the facilitation phase of the EDR process and would not be progressing further.  Why would

---

[62] See Exhibit E.3 (EDR-related Documents).

43

religious accommodations be treated differently? Plaintiff asked. **Erica provided**

**no information,** but indicated she would share Plaintiff's questions with her

coordinator/administrator.

141.   **No further information was provided.**

142.   That same day, September 30, 2021, Plaintiff submitted a formal

request via email to the Employee Dispute Resolution mailbox per EDR

guidelines.  Plaintiff disputed the decision to terminate the process and requested to

move to the next phase in the EDR process, which was peer review or mediation.[63]

143.   The next day, October 1, 2021, Plaintiff received confirmation of

receipt and that her request was under review and would take 3-5 days.

144.   On October 2, 2021, Plaintiff's supervisor, Keith Cox,  followed up

with Plaintiff, asking the status of her RAR.   He advised that he knew her

accommodation was denied and that her EDR request was closed on 9/29 at the

facilitation phase.  Plaintiff advised him that she had received on the previous day,

October 1, 2021, an advice from Employee Relations that they had received

Plaintiff's email disputing the EDR termination at facilitation and were taking 3-5

days to review it.

---

[63] See Exhibit E.3.

145.   In a meeting with Keith Cox on October 5, 2021 regarding accommodations for others, he asked Plaintiff the status of her accommodation request.  Reiterating what she had last told him—the EDR team would take 3-5 days to review--he said that was not what he understood.  Per his request, Plaintiff forwarded him the October 1, 2021 advice from the EDR team.

146.   On October 6, 2021, Plaintiff received an email informing her that her EDR case was closed, as stated in previous 9/29/21 email from EDR.   She forwarded the email to Cox, her supervisor.

147.   On October 7, 2021, Keith Cox, Plaintiff's Supervisor asked if Plaintiff would comply with the Vaccine Mandate.

148.   Plaintiff responded, No, based on her religious beliefs.  She also stated that, to date, she still had not received any specific reasons as to why the proposed accommodation could not be accomplished while performing the essential functions of her job.

149.   Cox did not provide any.

150.   The next day, October 8, 2021, Keith Cox advised her that she would be terminated.  Plaintiff again stated she still did not have any specific reasons she could not perform her essential job functions based on her proposed reasonable accommodations—which followed the EEOC guideline examples.

151.   No answer was provided.  By Cox.  Or by anyone.  Ever.

152.   No accommodation at all was provided or discussed—not even the testing and masking alternative to the vaccine ultimately proposed by Biden via an ETS filed by OSHA, in which Biden attempted, through OSHA, to implement his plan declared in his September 9, 2021 Speech that all corporations with 100+ employees were required to mandate the Vaccine.

153.   No one with Defendants even offered her weekly testing.

154.   On October 11, 2021, Cox on behalf of Defendants, unceremoniously off boarded Plaintiff, after nearly 28 years, without so much as a thank you. (Recording available).  And so Plaintiff's career was ended, as poet T.S. Elliot described,  "not with a bang, but a whimper."  And with no accommodation and no explanation. And with no list of tasks she could not do remotely or with her proposed accommodation.  **Nothing**.

155.   Defendants provided no interactive discussion with Ms. Johnson as contemplated by Title VII discrimination law.

156.   Upon information and belief, and based on lawsuits and claims that have arisen across the country against Defendants, it appears that Defendants denied multiple religious accommodation requests.

157.   Upon information and belief,  apparently inspired by the pressure and

compulsion Biden and other government officials leveled on Defendants, and all other Americans and corporations who listened to his September 9, 2021 speech, Defendants intentionally refused to grant Ms. Johnson's religious accommodation request, and even blocked her from participating in the EDR process that had always been a right available to all employees.

158.   Upon information and belief, these actions constitute harassment, retaliation and disparate treatment, and were taken because Defendants were hostile to her and her religious beliefs because, among other reasons, accommodating such beliefs was viewed as interfering with the vast mandate plan being coerced by Biden, the FDA, CDC, HHS, OSHA and related entities ("Biden et al.").

159.   Upon information and belief, given Defendants and Biden et al's symbiotic relationship, partnership and mutual interests in getting as much vaccine as possible sold and delivered, Defendants determined that neither they would do everything possible to ensure than neither religion nor any other objection would get in the way of Defendants vaccinating its employees, as Biden et al were demanding—no matter how much exceptional talent was lost as a result of this determination.  The line in the sand was drawn:  Jab or no job.  The allegedly "understandable" anger against the unvaccinated was taking tangible

form.[64]

160.   Defendants were compelled by Joe Biden individually and through his use of federal agencies like the CDC, FDA, HHS and OSHA, and as well as his use of and control over the media, to compel every human being to be vaccinated, and to compel large corporations to mandate COVID vaccinations for their thousands of employees to overcome the 80,000,000 who were still unvaccinated at the time of Biden's speech on September 9, 2021.

161.   Alternatively, or additionally, upon information and belief, Defendants worked in partnership with Biden et al and the pharmaceutical companies, which were all intertwined, to compel vaccination for as many employees as possible, by simultaneously denying as many religious or other accommodation requests as possible and just ignoring questions from those denied about why.

162.   As the 5th Circuit described it, by his mandate, Biden attempted to "deputize" private employers to carry out his desire that everyone in the country be vaccinated—regardless, apparently, of how dangerous the vaccines were or whether the employees wanted them or not.[65]

---

[64] See Exhibit N, Biden Speech.
[65] See Exhibit O.

163.   Vaccination is a medical procedure.

164.   Mandating the Vaccine was mandating a medical procedure necessarily involving actual piercing of the skin.

165.   In the case of the COVID Vaccine, only *experimental* Vaccines were available in the United States when Joe Biden and Defendants were mandating that all employees submit to the EUA Vaccines.  The Vaccine did not have full FDA approval or U.S. availability as inferred in Joe Biden's Speech.[66]

166. A vaccine authorized only pursuant to an EUA requires that the recipients of the vaccine be given informed consent, including detail set forth in in 21 CFR 50.25, which gives everyone the right to reject the experimental Vaccine without adverse consequence.

167.  Defendants did not obtain from their employees the required informed consent and did not provide them the information required by Informed Consent law.  Defendants sought to vaccinate everyone, as Joe Biden wanted, whether they wanted to be vaccinated or not, whether they knew of the VAERS risks or not, whether they had religious objections or medical objections or not.

168. Notwithstanding:

---

[66] See Exhibits H, N, P.

- the Vaccine's very short testing time;

- the government's knowledge that there were a great many serious Vaccine-related adverse health consequences known by the FDA, CDC other state and federal actors;

-  the records provided to the FDA/CDC by major suppliers of the Vaccine, including Pfizer, Inc. ("Pfizer");

- the millions of concerning reports by Vaccine takers who entered data into the government V-Safe system;

- public access to the testimony of doctors, scientists, and undertakers worldwide publicly publishing warnings and data about the serious dangers  of the Vaccine; and

- the FDA's own publicly-displayed VAERS system of keeping track of adverse reactions, the FDA, CDC, President Biden, mainstream media and others *heavily* marketed the Vaccine as "safe and effective.

169.   Defendants' leadership also, rather than merely parroting Biden's or the CDC or FDA misrepresentations about the Vaccine,  personally took on responsibility to represent its own knowledge of the "safety and efficacy" of the Vaccine.  In emails sent to thousands of employees, Defendants misrepresented  to employees the Vaccine's efficacy and assured them all

that the Vaccine was the best way to "stop the spread."

170. Although Biden attempted to issue a mandate that all employers of over 100 employees would be required via a new OSHA Emergency Temporary Standard ("ETS") to make all their employees get vaccinated, a lawsuit was brought by a diverse group of petitioners (including covered employers, States, religious groups, and individual citizens) against the proposed OSHA ETS rule and asked the court to issue a permanent injunction against it.

171. The 5th Circuit Court of Appeals, in BST Holdings v. OSHA[67], recognizing that OSHA was attempting to exercise an extraordinary power, and that such extraordinary power should be only delicately exercised, stayed the OSHA-attempted Mandate, stating that:

> …the Mandate is a one-size-fits-all *sledgehammer* that makes hardly any attempt to account for the differences in workplaces (and workers) that have more than a little bearing on  workers'' varying degrees of susceptibility of the supposedly "grave danger" the Mandate purports to address."[68]

172.  Although the Defendants' Vaccine Mandate email of August 11,

---

[67] Exhibit O. BST v. OSHA, 17 F.4TH  604 (5TH Cir. 2021).
[68] Se Exhibit F.

2021 purports to convey an intent to comply with applicable EEOC law and to grant appropriate legally-required accommodations, in fact, Defendants implemented its Vaccine Mandate in the same way Biden and OSHA attempted to implement its ETS—like a sledge hammer, giving no attention to the individual religious or medical or other concerns of its upper-level employees like Plaintiff, even denying them the right to address their dispute through the EDR system,  and firing a multitude of very talented employees because of their religious objections to the Vaccine.

173. Upon information and belief, Defendants were proud of their high numbers of vaccinated employees and made a decision intentionally or negligently to fail or refuse to follow the interactive processes required by law to provide religious exemptions or accommodations to its Mandate, specifically to Plaintiff.

174. Upon information and belief, Defendants had no interest in engaging in the required interactive process to evaluate the religious or medical concerns of each individual employee requesting an accommodation and intentionally did not respond to inquiries from employees like Ms. Johnson, who were attempting to talk to Defendants about an accommodation to save their life-long careers.

175   Importantly, and indicative of Defendants intent to disregard the law pertaining to religious accommodations, on Defendants' form outlining the specific

process of obtaining a religious accommodation, there is **no "interactive**

**discussion" element listed** in the RAR process described in detail on the Form.[69]

Defendants Leadership was loathe to meet the legal requirements of a religious

accommodation, apparently decided, in accordance with Biden's and its joint

interest in vaccinating as many people as possible,  it would not engage in

interactive discussions with each employee.  Rather, a decision was made by

Defendants to just summarily terminate numerous employees, including Ms.

Johnson and others especially those over age 50.

176.  Defendants failed and refused to have the legally-required

interactive discussion with Ms. Johnson despite her multiple attempts to have

this conversation.

177.  Defendants' failure and refusal to interact with Ms. Johnson to

discuss her request for a religious accommodation and to work out a way she

could remain employed while still accommodating her religious beliefs was

despite the fact that Defendants *knew* it had this obligation.   See Exhibit E.11,

the 9/23/21 email referenced *supra.,* which clearly reveals Defendants'

understanding that a **list of tasks (**job requirements **) the accommodation**

---

[69] See Exhibit D, RAR.

**applicant cannot do** from home, virtually or through Zoom, or with a reasonable accommodation, ***has* to be provided.**

178.  Despite the above, Defendants neither identified nor provided Plaintiff with a list of tasks she was unable to do given the requirements of the job if an accommodation was provided.

179.   Defendants chose not to discuss or offer to Plaintiff even the weekly testing President Biden offered in his September 9, 2021 speech about Vaccine mandates.

180.   Defendants failed and refused to offer Plaintiff even one alternative accommodation, and never ever asserted, much less, proved,  that Plaintiff's suggested accommodation or  any other would cause an undue hardship to Defendants.

181.   The accommodation Plaintiff suggested would have prevented any transmission of the COVID virus as well as or better than the Mandated Vaccine.

182.   Additionally, she would have been open to other reasonable accommodations Defendants might have proposed, if they had had the interactive discussion contemplated by law and proposed any alternatives whatsoever.

183.   But Defendants proposed no alternative to the Vaccine to Ms. Johnson, and would not discuss it, no matter how many polite, professional ways

Plaintiff tried to get them to discuss it.

184.   Rather, they just threw her out.  After almost 28 years.  With nothing.

No thanks.  No severance.  Not even a way to get unemployment compensation.[70]

185.   After they cast Plaintiff at the age of 51 into the pit of unemployment,

Defendants replaced Plaintiff promptly with a much younger woman in her early to

mid-thirties.  Vaccinated, no doubt.  With no religious accommodation requests to

worry about.

## COUNT I
## VIOLATIONS OF TITLE VII
### Religious Discrimination, Disparate Treatment, Hostile Work Environment, and Failure to Accommodate

186.  Plaintiff restates and incorporates herein by reference the preceding

paragraphs of her Complaint as if fully set forth herein.

187.  Title VII precludes Defendant from discriminating or retaliating against

Plaintiff on the basis of her religious beliefs or related protected activity.  So does

the Georgia Constitution, Article 1.   So does the U.S. Constitution, First

Amendment.

---

[70] By asserting that her termination was for "violation of policy," Defendants prevented her from even getting unemployment compensation.  See Exhibit  S.

188. Title VII specifically requires Defendant to provide Plaintiff a reasonable accommodation if the tenets of Plaintiff's religion conflict with Defendant's policy so as to enable her to continue working, as long as it does not cause Defendant undue hardship.

189. Title VII contemplates and requires that Defendant and Plaintiff engage in an interactive discussion in order to develop an accommodation that will allow Plaintiff to continue her employment in a way that does not conflict with her religious beliefs.

190. Title VII also demands that Defendants treat equally well comparable employees.

191. Title VII also prohibits Defendant from discriminating against Plaintiff, retaliating against Plaintiff because of her religion or protected activity, denying her benefits others like others comparable to her receive, and from creating a hostile work environment because of her religion and/or accommodation request.

192. Despite knowing the law, Defendants intentionally failed and refused to engage in the interactive discussion contemplated by law or discuss in any way Plaintiff's request for a religious accommodation or her proposed accommodations.

193.  Defendants' treatment of Plaintiff in  a hostile and uncooperative way, by continuously ignoring her questions, refusing to discuss her accommodation concerns, failing and refusing to tell her what tasks she could not do if her accommodation was accepted, blocking her from using the much less- expensive- than- court litigation EDR system after she was denied a religious exemption to the Vaccine mandate, and other circumstances described throughout this Complaint that implies a disrespect for Plaintiff and/or her religion, created for Plaintiff a Hostile Work Environment.

194. Defendants failed and refused to offer Plaintiff any accommodation whatsoever, in violation of Title VII.

195. Because Plaintiff requested a religious exemption, advocated for her religious accommodation rights, and tried to resolve Defendants' denial of a religious accommodation and their refusal to discuss it or her proposed accommodations, Defendants, in retaliation,  cut off her access to Defendants' internal Employee Dispute Resolution process and then brutally terminated her job and her lifetime career of almost 28 years of exemplary service to Defendants.

196.  Normally, if an employee has a concern of some kind and seeks assistance from Defendants, HR or another department will conduct an investigation, and/or the employee will be referred to the EDR system so the employee's complaints or issues

can be resolved as best as possible.

197. Defendants did no proper investigation of Plaintiff's questions about accommodating her religious beliefs.

198. Defendants did no proper investigation of Plaintiff's questions regarding why persons with religious accommodation requests were kicked out of the EDR process and treated differently, while  others who had not asked for a religious accommodation but who wanted to use the EDR were allowed to do so.

199. Upon information and belief, Defendants failure and refusal to investigate was deliberate and part of the attempt to usher out the door as quickly as possible those who could not take the Vaccine and who requested an accommodation instead.

200. Defendants failed to suggest or offer Plaintiff any accommodation whatsoever to her  religious beliefs or explain in any way why they could not.

201. Plaintiff's proposed accommodation (as reflected in Exhibit D) would have caused Defendant no undue hardship.

202. Even simply continuing the masking, social distancing and/or testing that was already used successfully by Defendants for a year and a half prior to the development of the Vaccine Mandate could have been offered to Plaintiff, and would

have been accepted, but Defendant refused and offered Plaintiff nothing at all.

203. By operating very successfully for a year and a half using the safety procedures described, and by earning enormous profits with no impairment whatsoever to Defendants' income, Defendants proved that accommodations like masking, testing, and/or social distancing work well and *do not c*ause undue hardship.[71]

204. Plaintiff's requests and questions described herein were activities protected conduct under Title VII, i.e., "protected conduct."

205. Defendants would suffer no undue hardship from accommodating Plaintiff either in the way Plaintiff requested, or by simply continuing the safety measures Defendant had used for a year and a half before it mandated the Vaccine, or even  by offering the alternative named in the Biden speech, i.e.,  weekly Covid testing.

206. Defendant violated Title VII by:

- failing and refusing to have an interactive discussion to develop with

---

[71] See Exhibit M, UPS Financial statement 2020-2022, and Exhibit C (UPS Briefing admitting that "Over the last 18 months, many Corporate and other nonoperations UPSers have been working remotely **with great success.**") Emphasis added.

Plaintiff a suitable accommodation, and refusing to tell her what tasks she could **not** do if Defendants accepted her proposed accommodation.

- failing to offer her any accommodation whatsoever, unlike multiple other comparable employees who were managers.

- ignoring her questions, while answering the questions of others not requesting a religious accommodation and who were younger (under 50).

- blocking her from participation in the EDR system offered all other employees who had not requested a religious accommodation, and thereby making her incur the much greater expense of filing the instant litigation to resolve her dispute.

- allowing a great many comparable employees in different departments (e.g., Operations and others) to continue their jobs and interact with others in person and  in close environments without the Vaccine Mandate and without any need to try to get an accommodation.[72]

- unceremoniously terminating Plaintiff.

---

[72] See, e.g., Exhibit  I, AJC Article

- demonstrating disrespect, indifference and/or hostility to Plaintiff and to Plaintiff's faith by their actions. All these things created a hostile work environment for Plaintiff and other employees of Christian faith. Defendants' actions and inactions were topped off by Defendants' labeling Plaintiff's efforts to comply with Defendants' and Title VII rules as "violation of policy" so as to prevent her from getting unemployment compensation.

- refusing to offer her, unlike others who had worked in a stellar capacity for Defendants for practically their whole working lives, any severance whatsoever.

207. Defendant harassed, embarrassed, defamed and retaliated against Plaintiff, made her the obvious target of intentional disparate treatment, cast her in a false light, interfered with her clear entitlement to government unemployment and other benefits, destroyed her ability to ultimately retire in the manner for which she had endlessly toiled for almost 28 years, deprived her of significant financial and other resources to which she is entitled (past, present and future) and caused her extreme mental anguish, among many other damages that will be demonstrated at trial.

208. Plaintiff is entitled to the maximum damages permitted by applicable law

including, without limitation, all damages she has incurred as a result of Defendants' actions, including without limitation, front pay (including the retirement compensation she would have earned but for Defendants' unlawful actions); back pay (including salary, bonuses, awards, the value of Defendants' employee benefits, and any other compensation that would have been payable to Plaintiff as an employee); compensatory damages (including, without limitation, the damages she experienced to her career, her privacy, her reputation, her sense of self, her home life, all anxiety resulting from the severe and not entirely reparable emotional distress, mental anguish, medical costs, and damages resulting from Defendants' interruption of her upwardly mobile career), interest, punitive damages and/or liquidated damages, and attorney fees in amounts to be demonstrated at trial.

## COUNT II
### Age Discrimination

209. Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if fully set forth herein.

210. The Age Discrimination In Employment Act ("ADEA"), 29 U.S.C. § 621, prohibits Defendants from discriminating against Plaintiff on the basis of her (over 40) age. Plaintiff was at all relevant times age 51.

211. As stated above in the Facts paragraphs, Defendants had for years a pattern and practice of "managing out the door" employees in their 50s so they could be replaced with younger employees.

212. Plaintiff and others are aware that one of Defendant UPS's executives was heard to say, "Don't bring me anyone over 45" to interview for a management position.

213. Others who have been the victims of this "managing out" process will validate the reality of this age-related process, especially as Defendants went through a lengthy process it called the "Transformation."

214. Upon information and belief, given that Plaintiff was now in her 50's, Defendants intentionally used Plaintiff's request for a religious accommodation as a convenient opportunity to "manager her out" without even offering or paying her severance.

215. Defendants "managing out" activities typically involved convincing, (through adverse actions, creating hostile work environments, or otherwise) managers who they deemed "too old" (i.e., in their 50's) to accept a severance agreement Defendants' felt might be accepted in exchange for leaving their employment with Defendants and releasing Defendants from all claims.

216. Upon information and belief, Plaintiff's younger colleagues and comparators who requested accommodations from the Vaccine received them and were not put through the same disrespect, harassment and termination process Plaintiff experienced, nor were they denied access to the EDR process, whereas older employees who requested accommodations from being shot with the abominable Vaccine were denied accommodations and terminated, like Plaintiff was.

217. Upon information and belief,  but for Plaintiff's age, she would have remained employed.

218. Defendants' actions were willful, intentional, premeditated, in bad faith, and the proximate cause of substantial injuries to Plaintiff.

219.  Plaintiff is entitled to the maximum damages permitted by applicable law as stated herein and as will be demonstrated at trial, including all those set forth *supra.* and elsewhere in this Complaint.

**COUNT III**
**VIOLATION OF THE AMERCANS WITH DISABILITIES ACT,**
**AS AMENDED ("ADAAA")**

220. Plaintiff restates and incorporates herein by reference the preceding

paragraphs of his Complaint as if fully set forth herein.

221.  The ADAAA was designed by Congress to protect the employment of not only the disabled, but also those who are "*regarded* as" disabled—even if they are not actually disabled.   See 42 USC §1210(1)(c).

223.  Upon information and belief, because Plaintiff was unvaccinated, Defendants--like Biden in his September 9, 2021 speech *against* the unvaccinated[73] --viewed Plaintiff as disabled—unable to do her job, "less than," unworthy of employment or EDR employment processes. Instead, she was worthy of harassment, disrespect and discharge.

224. In fact, Plaintiff was perfectly able and willing to do her job with a reasonable accommodation, and was the same stellar, devoted employee she had been for almost  28 years—highly worthy of respect and respectful treatment, as well as a religious accommodation.

225. Notwithstanding, Defendants intentionally refused to provide an accommodation, and instead provided the harassing and disrespectful disregard that Plaintiff experienced, as described throughout this Complaint.

---

[73] See Exhibit N and  relevant excerpts of the Biden speech set forth in this Complaint s*upra.*

226.  In terminating her for not abdicating her faith, for instead standing up for her faith, and for remaining unvaccinated, Defendant regarded her as having a disability, discriminated against her because of this perceived disability, and thereby violated the ADAAA.

227.  Defendants did not treat in this hostile way employees who had not asked for a religious accommodation, and/or were not over 50, and/or who had not been in a car accident and had hip replacement surgery, whom they did not view as disabled.

228.  Plaintiff is entitled to all the damages available under the ADAAA, as set forth herein, for Defendants' discrimination, unequal treatment, failure to accommodate and other illegal treatment because they "regarded her as disabled" as stated in this Complaint and as will be proved at trial.

## COUNT  IV
## VIOLATION OF 42 USC § 1983 AND/OR
## BIVENS V. SIX UNKNOWN FEDERAL NARCOTICS AGENTS
## (DEPRIVATION OF RIGHTS UNDER COLOR OF LAW)

229.  Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if fully set forth herein.

230.   This lawsuit is about the very real and overwhelming loss for those like Plaintiff who could not abdicate their religious beliefs to take the religiously despicable Vaccine, no matter how much they wanted to please their employer. Many employees who believe like Plaintiff and view the injection of the Vaccine as a religious abomination, felt extremely pressed to compromise their faith  for fear of losing their ability to support themselves and their families.    This should never be a decision anyone in America is forced to make.

231.   Those mentally and spiritually unwilling to take the Vaccine, but who capitulated to the Mandate for fear of financial devastation, thus submitted  their physical bodies to the irreversible Vaccine injection and now have to live the rest of their lives with the ever-increasing  possibility of  significant physical, mental, and spiritual injuries and possibly early death.  Many mandated with the Vaccine per Biden et al's demands, and the consequent demands of their employers, have already paid with their physical health, spiritual health, and in many cases their very lives.

232.   This is wrong in America.  Section 1983 (42 USC §1983) and <u>Bivens (Bivens V. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971)</u> and its progeny protect U.S. citizens from these horrifying outcomes compelled by

employers acting under compulsion from or in sync with government actors.

Plaintiff urges the court to uphold these laws and hold Defendants accountable for :

- their actions on those who had no power or position to resist the Mandate, and

- for their actions on those who were courageous enough to stand up for their faith and resist the Mandate for religious reasons, like Plaintiff.

233.   As explained in the Facts section, Defendants and the Government, including Biden et al, and pharmaceutical companies partnered together to distribute the Vaccine all over the world as quickly as possible to their great profit.[74]

234.   This partnership was extremely lucrative for Defendants and, at a minimum, the relevant pharmaceutical companies manufacturing the Vaccine.

235.   Under color of law, Biden et al essentially "deputized" Defendants[75], and under the coercion, encouragement and demand of  Biden et al to get ***all*** employees vaccinated, used Defendants to deprive Plaintiff of  rights secured by the U.S. and/or the Georgia Constitution, including the right to the free exercise of religion guaranteed Plaintiff by the U.S. Constitution First Amendment, as well as

---

[74] See Exhibits K, Articles regarding Defendants partnering with the Government and Vaccine makers.
[75] "Deputized" is the language used by the 5th Circuit in <u>BST Holdings,</u> 17 f.4th 604, 610 (5th Cir. 2021), attached as Exhibit O.

the Right to Privacy and Bodily Integrity, guaranteed by the U.S. Constitution's 5th Amendment and 14th Amendment Due Process Clause. The Georgia Constitution, Article 1 also guarantees freedom of religion and has been violated by Defendants actions as stated in this Complaint.

236.   The forcible injection of an experimental medication in violation of Plaintiff's religion, and into any nonconsenting person's body, represents a substantial interference with that person's liberty, her right to freely exercise her religion, and her right to privacy and to bodily integrity.

237.   The injection of the aborted fetus-derived Vaccine is an abomination to Plaintiff and other Christians and is a clear violation of the Christian religion that holds every life sacred.

238.   The injection of an aborted fetus-derived, physically hazardous Vaccine into her body is an abomination to Plaintiff and other Christians, as it is, among other things, a desecration of the human body, which is the Temple of God.

239.   As the 5th Circuit in the BST Holdings v. OSHA case, *supra* (Exhibit O), explained:

> "The [Vaccine] Mandate threatens to substantially burden the liberty interests of reluctant individual recipients put to a choice between their job(s) and their jab(s). For the individual petitioners, the loss of constitutional freedoms "for even minimal periods of time . . .

unquestionably constitutes irreparable injury." <u>Elrod v. Burns,</u> 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

The <u>BST</u> court explained that Biden, via an ETS issued by OSHA requiring corporations with100 + employees  to mandate their employees to be vaccinated,  sought to "**deputize**" private companies to carry on his Vax Mandate plan developed via OSHA. See <u>BST Holdings v. OSHA,</u> 17 F.4th 604, 610 (5th Cir. 2021).[76].

240.   The 5th Circuit explained in <u>BST</u> that the Biden OSHA Mandate involves compliance costs for both parties.

241.   Upon information and belief, Defendants, due to their partnership with Biden et al in distributing the Vaccine throughout the world, already well knew of Biden's plan to attempt to require large corporations like Defendants to mandate the Vaccine well before his September 9, 2021 Vaccine Mandate speech and well before Defendants' August 11, 2021 Vaccine Mandate.[77]

---

[76] See Exhibit O, "[T]he Mandate imposes a financial burden upon [the plaintiff corporations] by deputizing their participation in OSHA's regulatory scheme."  <u>BST</u> at 610.

[77] See Exhibit P Fact Sheet re Biden's lengthy efforts to vaccinate the masses dated July 29, 2021, and Exhibit K.1, K.2, Articles re Defendants' partnership with Biden et al.

242.   Upon information and belief, Defendants, due to their very lucrative partnership with Biden et al, were compelled by business necessity and Biden's relentless coercion to lead the way by being an example to other corporations and mandating  all their employees to submit to the Vaccine.

243.   Granting religious and/or medical accommodations interfered with Defendants' objective to get extremely high numbers of vaccinated employees and to keep good business relationships with Biden et al.

244.   Upon information and belief, under this regime, Constitutional rights took a back seat and were clearly less important than getting everybody possible vaccinated.  As reflected in Biden's September 9, 2021 Speech, Exhibit N, the unvaccinated were viewed with distain, regardless of the reason for their unvaccinated status, and being angry with them, and by inference ignoring their Constitutional and other rights, was acceptable, even noble. See Exhibit N and Biden speech excepts *supra.*

245.   Upon information and belief, Biden demands upon Defendants and other large corporations to lead by example the Vaccine Mandate plan, resulted in Defendants, in violation of §1983 and/or Bivens, trampling Plaintiff's U.S. and state Constitutional rights. Defendants went forward with the Biden et al mandate inculcated into Defendants and other  large corporations over months of intense

effort well prior to the September 29, 2021 Biden Speech and prior to Defendants'
August 11, 2021 Vaccine Mandate policy announcement.

246.   Plaintiff has suffered costs of this plan in a way that will never fully
be recovered.

247.   Defendants  were "deputized" by Biden and the government to act as
an arm for his/their Vaccine Mandate wishes.[78]

248.   Plaintiff and others who wished to remain unvaccinated for religious,
medical or other reasons are the among the most injured with regard to the
Mandate.  Hardly anything compares to the loss suffered by mandated employees
who have lost their lifetime careers for standing up for their religious beliefs.  The
only ones suffering more loss where those employees who succumbed to the
pressure of the Mandate, whether they wanted to or not, and suffered significant
physical injury and death as a result.  And there are very high numbers of those.
See, e.g., Exhibits  G documents, L and Q.

---

[78] President Biden, using as his arm the mainstream media, and attempting to use OSHA as
another arm, engaged in a lengthy and intense tirade of demands and executive orders that
infiltrated into the homes of virtually every US citizen with access to television and other media
night and day, virtually without ceasing, in an effort to instill fear and compel compliance with
his demands that *everyone* get jabbed with the Vaccine.  See, e.g., Exhibit P, Exhibit N.

249.   Mandates are wrong on multiple levels.  This court should hold

Defendants accountable for their illegal actions and their deprivation under color of

law of Plaintiff's U.S. and state Constitutional rights.

250.   Upon information and belief, no one can be legally compelled or

mandated to inject an experimental drug, under color of law or otherwise.

**Right To Deny**

**An EUA Vaccine Under Federal Informed Consent Law.**

251.   Informed Consent, and the right to opt out of taking the Vaccine with

no adverse consequences, is the right of every person presented with an

experimental Vaccine.  See 21 U.S.Code § 360bbb-3(c) and 21 CFR §50.25.  This

right is part of a liberty interest Plaintiff has under the U.S. Constitution, as well as

a Constitutional right to privacy and bodily integrity.

252.   The only Vaccine available at the time of Defendants' Mandate [and

possibly still now] was/is  approved *only* by the FDA's **EUA**.   This attached

Amicus Brief[79]  explains in part the deception instituted by the FDA by issuing a

press release stating in effect that the Pfizer BioNTech Vaccine had been FDA

---

[79] See Exhibit H, Amicus Brief submitted to the U.S. Supreme Court in connection with Biden's
U.S. Supreme Court OSHA Mandate case, written by, among others, attorney Sidney Powell.
See also, https://www.statnews.com/2021/02/23/federal-law-prohibits-employers-and-others-
from-requiring-vaccination-with-a-covid-19-vaccine-distributed-under-an-eua/#.

*fully* approved under the label Comirnaty and that the BioNTech and Comirnaty were "interchangeable."  The truth is they are not interchangeable.  Chief Scientist, Denise M. Hinton has  admits an approved vaccine (Comirity) and an EUA (BioNTech) are "legally distinct."  The testing and review required for an EUA is not nearly as extensive as that required for a fully approved drug label.  Pfizer had already made so much BioNTech vaccine, and upon information and belief, the U.S. had already bought so much BioNTech, Pfizer in conjunction with the U.S. Government, was unwilling to produce Comirnaty until the EUA BioNTech vaccine supply was dissipated.  Additionally, upon information and belief, the EUA Vaccines came with a valuable special bundle of liability protection that both Pfizer and the Government wanted to maintain.

253.   The FDA admits it issued this "approval" so more individuals would be less hesitant to take the known-to-be potentially very hazardous Vaccine—not because it had had the requisite time to do the normal testing an FDA approved vaccine goes through.  The reality is that every Vaccine available to any U.S. citizen at the time of Defendants' Mandate and Biden's attempted OSHA Mandate, was an EUA experimental vaccine. [80]

---

[80] See Amicus Brief, attached as Exhibit H.

254.   Plaintiff has a Constitutional liberty interest in being permitted, as detailed in this Complaint, to deny compliance with a EUA Vaccine  Mandate without adverse consequence.  Contrary to law, Defendants never told Plaintiff of her rights to refuse the experimental vaccine, and has clearly violated her rights by not providing her notice of her rights, as required, and by heaping upon her an extreme penalty and loss of benefits to which she is entitled.

255.   As 21 CFR §50.25(a)(8) states, participation in taking an experimental vaccine "is voluntary, [and] refusal to participate will involve no penalty or loss of benefits to which the subject is otherwise entitled, and ….the subject may discontinue participation at any time **without penalty or loss of benefits** to which the subject is otherwise entitled."

256.   Plaintiff is entitled to be made whole from not being given the right to refuse the Mandate pursuant her religious beliefs under federal and state Constitutional and other law and for Defendants' blatant interference with her Constitutional and related rights by pushing on her this Mandate, without providing the required notice of the option to refuse it..

257.   Among other penalties and injuries, Plaintiff lost the exceptional career and benefits she spent her whole life building as a result of Defendants capitulation to the pressure exerted by Biden et al and their deliberate refusal to

comply with the informed consent laws applicable to the prospect of participating in taking an experimental vaccine.   Defendants' destruction of Plaintiff Constitutional rights violated, among other things, the laws set forth in 42 USC § 1983, made applicable to federal government wrongdoing by <u>Bivens</u>.

258.   Plaintiff asks this court to require Defendants to repay, to the extent even possible,  the "compliance costs" she suffered when Defendants complied with Biden's mandate and implemented the mandate against their own employees in violation of multiple Constitutional rights and other laws.  As the <u>BST</u> court explained[81]:

> The public interest is …served by maintaining our constitutional structure and ***maintaining the liberty of individuals to make intensely personal decisions according to their own convictions--even, or perhaps particularly, when those decisions frustrate government officials' s own.***

---

[81]  Note this paragraph explains the plaintiff corporations' concerns in **<u>BST</u>**.  Defendants apparently did not share these concerns, as they eagerly enforced the mandate, even before it was announced in the Biden Speech, without regard to the employee costs, and before the supposed full FDA approval of the Vaccine as Comirnaty on August 23, 2021.  The vaccine mandate in <u>BST</u> was ultimately struck down by the U.S. Supreme Court in <u>National Federation of Independent Business v. Dept. of Labor</u>, 142 S. Ct. 661 (2022) on the basis that OSHA did not have the power to enforce this invasive law on 84.2  million corporations, with the objective of vaccinating 100 million people.  If the President and OSHA do not have the power to mandate corporations and their employees  to submit  an intensely personal experimental vaccine, Defendants certainly have no greater rights.

It is everyone's right to choose his or her own medical procedure. [82] [83]

259.   Defendants  have  violated Plaintiff's rights under §1983 and/or

Bivens and Plaintiff is entitled to all her damages under applicable law.

260.   Plaintiff asks this court to make Plaintiff whole from the injuries

Defendants have caused her in an amount to be proved at trial.

---

[82] As in the multiple cases establishing a woman's right to choose an abortion, it is everyone's right to choose a medical procedure. It is abhorrent and an abrogation of the rights Americans have all enjoyed as U.S. citizens for decades now to have an employer, the government or anyone else—not even a doctor—**mandate** a medical procedure. Defendants have no qualifications to order medical procedures, nor any right to do so.

[83] This was the law even prior to the development of the Law of Informed Consent, starting in 1914 when Judge (later Supreme Court Justice) Benjamin Cardozo validated the concept of voluntary consent in Schloendorff v. Society of New York Hosp.,105 N.E. 92, 93 (N.Y. 1914) when he deemed any medical intervention without Informed Consent an unlawful **trespass**:

> "Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent commits an **assault** for which he is liable in damages."

By instituting the Vaccine mandate and threatening to end their careers and leave them destitute, Defendants has likewise directed such an assault on the employees of UPS and Capital, especially those unvaccinated with religious objections, including Plaintiff.

Worse, the assault has done under color of state law.[83]

## COUNT V

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

261.   Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if fully set forth herein.

262.   Defendants and Plaintiff had unequal bargaining power in the employment arena,  and by treating Plaintiff's religious beliefs with contempt, disrespect, and/or indifference, Plaintiff intentionally inflicted emotional distress on Plaintiff.

263.   Defendants knew failing and refusing to respect or discuss Plaintiff's religious beliefs, failing and refusing to accommodate her  as required by law, depriving her of an EDR process to do anything about it, and requiring her to abdicate her religious beliefs if she wanted to remain employed, would cause Plaintiff enormous emotional distress.

264.   Terminating Plaintiff for expressing her religious beliefs and requesting an accommodation, and then characterizing this conduct as "violating policy"-- so that this suddenly unemployed almost 28-year UPS veteran could not even receive unemployment compensation--was extreme and outrageous.[84]

265.   Upon information and belief, upon hearing Biden's speech against the

---

[84] See Exhibit S, Denial of Benefits for violating Vaccine Mandate.

unvaccinated on September 9, 2021, Defendants, on behalf of themselves, Biden, the government and the country wanted to punish Plaintiff for being unvaccinated and being unwilling to get vaccinated. Plaintiff's religious beliefs did not matter. Defendant used Plaintiff's termination and treatment to not only punish Plaintiff for her religious refusal but to also frighten and deter others who were considering remaining unvaccinated or who had religious objections to the Vaccine mandate.

266. Defendant's extreme and outrageous conduct naturally, foreseeably, and directly caused Plaintiff extreme and severe emotional distress, mental anguish, shock, humiliation, despair, helplessness, embarrassment, depression, inconvenience, loss of income and benefits (past and future), humiliation, other indignities and other mental and emotional damages.

267. Defendant's conduct is of a type and nature that ought not be permitted in a civilized society, and certainly not a society governed by laws like the U.S. Constitution and other laws governing fairness and civility, informed consent, and holding inviolate individual rights to life, liberty, the pursuit of happiness—and freedom of religion and freedom to determine what medical procedures will be allowed to pierce and invade her body.

268. Defendants are liable for all damages associated with this tort, including uncapped punitive and other damages, in an amount to be proved at trial.

## COUNT VI
## PRACTICING MEDICINE WITHOUT A LICENSE AND
## FAILURE TO OBTAIN INFORMED CONSENT

269.   Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if fully set forth herein.

270.   As earlier stated, getting the Vaccine is a medical procedure.  It involves a needle piercing the skin and irreversibly shooting into the body a liquid of experimental character, with many medical hazards and deaths publicly associated with it.  Defendants and Biden's Vaccine directive was made without any consideration at all of Plaintiff's or any employee's medical status, religious status, or concerns of any kind.

271.   Defendants' leadership, not being medical doctors, health practitioners or otherwise having license to order or direct medical procedures, and not even having the power of the Secretary of Health and Human Services, as described 21 U.S. Code § 360bbb-3,  or OSHA as explained in National Federation of Independent Businesses, *supra.*, have and had no right or standing to demand that any part of their 534,000 employees undergo such a medical procedure, especially without the informed consent required by 21 U.S.Code § 360bbb-3(c) . And they certainly didn't have the right to unequally apply this mandate based on value to the company rather than perceived risk of transmission.  Being around

80

other people certainly did not mandate a concern for the Operations workers sufficient to require a Vaccine of them, even though they interact closely with each other and the public.

272.   Mandating a medical Vaccine procedure violates the Constitutional rights to individual privacy and bodily integrity as earlier explained herein, and also violates laws requiring medical procedures to be ordered only by licensed medical personnel and only with the patient employee's informed consent.

273.   Authorizing the Vaccine under an EUA essentially allows an experiment on the entire U.S. population and anyone else to whom it is provided.

274.   Mandating that a person participate in such an experiment, even when it conflicts with his religious beliefs, violates, among other laws,  the doctrine of informed consent under both federal law and state law.

275.   The government, in issuing 21 CFR Part 50.25, has made clear that for experimental medical products like the COVID Vaccine, much information must be provided to the person receiving the experimental medical product or procedure, and informed consent must be obtained.  Basic elements of informed consent required under federal law, among other things, include:

**\*\*\*2.        A description of any reasonably foreseeable risks or discomforts to the subject**….This was not

done.  Rather, ignoring the cold reality of published VAERS

information, the "safe and effective" mantra was repeated often by

Defendants.  It was reiterated by Defendants in the August 11, 2021

Vaccine Mandate email, Exhibit C, that "Vaccination remains the best

way to ensure personal safety, public health and business continuity."

Thereby making their own the mantras of Biden et al, without any

independent research of their own.

> **4.     An EUA cannot be made unless there are no other alternative medicines. [85] \*\*\***

….          **8.     A statement that participation is <u>voluntary</u>, that**

**<u>refusal to participate will involve no penalty or loss of benefits</u> to**

**which the subject is otherwise entitled**, and that **the subject may**

**discontinue participation at any time without penalty or loss of**

**benefits to which the subject is otherwise entitled.**

256.   The very nature of a *mandate* eliminates voluntary participation.

Defendants made clear that the Vaccine was not an option--taking the Vaccine was

an absolute requirement of everyone's job, and loss of employment would result

---

[85] See 21 USC 360bbb3(e)(1)(A)(ii)(III); FDA.gov, EUA Medical Products, Criteria for Issuance; No Alternatives. There were certainly excellent alternatives to the Vaccine, well known, but actively suppressed by the government and media.  See, Robert F. Kennedy, Jr., <u>The Real Anthony Fauci,</u> Skyhorse Publishing, 2021.

for failure to comply.  Indeed, Plaintiff and others at Defendants business lost everything they had worked for all their lives.

257.   Upon information and belief, in mandating the experimental Vaccine, Defendants obtained from no one, including Plaintiff, the required informed consent for the experimental Vaccine.

258.   Informed consent to a medical procedure has long been required of those participating in a medical process in Georgia.

259.   Since Defendants, through their leadership, in mandating a  medical procedure for thousands of employees, has attempted to step into the shoes of the government[86] and/or a health care practitioner,  it is subject to the state laws regarding licensure and informed consent.

260.   Upon information and belief, Defendants and their  leadership have no medical license and thus, by mandating a medical procedure, Defendants  are practicing medicine without a license.

261.   Under Georgia law, the intended recipient of a medical procedure has the absolute right to determine whether or not she will accept or decline the service.  Even the health care provider—i.e., the person directing or actually

---

[86] The Fifth Circuit referred to this procedure as the large private employer  being "deputized." See BST v OSHA, Exhibit  at  F (highlighted).

performing the medical service—is not allowed to make a decision for the intended recipient of the service without the recipient's consent—*even if the health care provider thinks the service is medically necessary and will save her life.*[87]

262.   The Georgia Supreme Court has noted:

263.   "The General Assembly has long recognized the right of the individual to control all aspects of his or her personal care and medical treatment, including the right to insist upon medical treatment, decline medical treatment, or direct that medical treatment be withdrawn. Ga. L. 2007, p. 133, § 1 (a)." See Exhibit R, <u>Doctors Hospital of Augusta, LLC v. Alicea</u>, 299 Ga 315, 788 S.E.2d 392 (Ga. 2016).

264.   By mandating the Vaccine, Defendant has attempted to take away this right long recognized by the Georgia General Assembly and has done so by destroying Plaintiff's lengthy career and inflicting on Plaintiff great injury and damage.

265.   Defendant is liable for all Plaintiff's damages for this intrusion and denial of her right to choose what medical procedures will be permitted on his own body, and for punishing her for declining a medical procedure, in an amount to be

---

[87] See Exhibit R, <u>Doctors Hospital of Augusta, LLC v. Alicea</u>, 299 Ga. 315, 788 S.E.2d 392 (Ga. 2016).

demonstrated at trial.

## COUNT VII
## NEGLIGENCE

266.    Plaintiff restates and incorporates herein by reference the preceding paragraphs of her Complaint as if fully set forth herein.

267.    Especially given that Defendant had approximately 534,000 employees, Defendant had an extremely important duty to thoroughly research independently whether or not the Vaccine it was contemplating injecting into thousands of employees was indeed "safe and effective."

268.    Upon information and belief, Defendant breached this duty and failed to adequately research the adverse effects and other risks of the Vaccine before insisting it be shot into thousands of  human beings.

269.    Part of the Christian religion involves the belief that one's body is the Temple of God, and a believer is not to desecrate or inflict harm on the Temple of God.  The Vaccine desecrates the physical body as the risk of harm is substantial.

270.    Plaintiff, in her request for a religious accommodation, Exhibit D, provided specific information regarding not only the Vaccine's development from aborted fetus cell lines, but also the civil rights and Constitutional implications of mandating the Vaccine.

271.   Upon information and belief, although Defendant had public access to significant information via the FDA/CDC websites of its partners in vaccine delivery, including without limitation, the information supplied via VAERS,  and sufficient resources to do any research possibly needed,  they did not bother to investigate the hazards of the Vaccine prior to or after mandating that thousands of employees inject the experimental substance into their bodies or face termination of their careers.

272.   Upon information and belief, notwithstanding this lack of adequate investigation, Defendants represented to thousands of employees that the  Vaccine was "safe and effective," and was "the best ways to ensure  personal safety, public health and business continuity,"  thereby enticing some to rely on the apparent expertise  and resources Defendant had in determining the safety and effectiveness of the Vaccine.  Surely, Defendants would not force on their thousands of employees a Vaccine that it had not thoroughly investigated or that could be, or worse, was, highly likely to be hazardous to their health.

273.   Defendants' negligence in mandating the Vaccine leaves it responsible for any injuries that occur to its employees.

274.   Defendant's negligence and failure to:

- review information provided by Plaintiff;

- have an interactive discussion with Plaintiff regarding his religious issues and how they could be accommodated;

- seek counsel regarding its employees' individual rights affected by its Mandate and its duties to provide accurate information and to not subject its employees to undue hazards by negligent misrepresentation; and by

- other negligence, resulted in its creation of the Mandate and ultimately its refusal to grant Plaintiff an accommodation as required by law.

275.   Had Defendants done adequate research in the first place, given that relevant information was publicly available at the time mandate decisions were being made, upon information and belief, they would not have issued the Mandate and thereby caused enormous harm to Plaintiff and others terminated, or injured, because of it.

276.   Defendant's negligence, through that of its individual leadership, has caused Plaintiff significant damage for which she is entitled to recover in full, as will be demonstrated at trial.

**WHEREFORE,** Plaintiff demands a Jury Trial and respectfully urges the court to grant the following relief:

(a) Enter judgment on all counts in favor of Plaintiff and against Defendants;

(b) Award Plaintiff all damages she has suffered as a result of Defendants'
conduct and violations of law, including without limitation: front pay
(including retirement benefits she would have been entitled to but for
Defendants' conduct, back pay, compensatory damages (pecuniary and
non-pecuniary damages)-including damages for all mental anguish and
suffering caused by Defendant);  and interest as provided by law in an
amount to be determined by the jury;

(c) Award punitive damages and/or liquidated damages as appropriate in an
amount sufficient to punish Defendants for their extensive violations of
Plaintiff's rights and damages they have caused to her entire life,  and to
ensure this type of conduct ceases and will not occur again;

(d)   Award all reasonable attorney fees and costs Plaintiff has had to incur
attorney and other required fees and costs related to this action;

(e)  Award any and all additional relief this court believes is just and
proper.

Respectfully submitted this 6th day of February 2023.

HIPES LAW LLC


*s/Jeanne Bynum Hipes*
Jeanne Bynum Hipes
Ga. Bar No. 100575
Counsel for Plaintiff

Hipes Law LLC
2475 Northwinds Parkway
Suite 200
Alpharetta, GA  30009
PH:  678-867-7006
FAX:  770/783-5010
EMAIL:  counsel@hipeslaw.com

## COMPLAINT EXHIBIT LIST

**Exhibit A**

Plaintiff's EEOC Charge

**Exhibit B**

EEOC Right to Sue

**Exhibit C**

August 11, Vaccine Mandate and UPS Briefing

**Exhibit D**

Plaintiff's Religious Accommodation Request ("RAR")

- Exhibit D.1
  - o Plaintiff's RAR Submission 8/30/2021
- Exhibit D.2
  - o Plaintiff's Message: Why was RAR denied?
- Exhibit D.3
  - o UPS Message: 9/15/2021 RAR DENIED, Mgmt will contact Plaintiff
  - o Plaintiff's Message: Spoke w Gloria Weber on 9/14-could not answer Plaintiff's questions.
- Exhibit D.4
  - o 9/17/2021 Email from HR asking if Keith Sklarsky can work remote
- Exhibit D.5
  - o 9/23/2021 Plaintiff email with Cox-all Sales Enablement classified as Telework/Hybrid
- Exhibit D.6

- o Plaintiff's emails with HR-Justin Farmer says re rescinding RAR approvals for employees where employees in other areas, similar positions, already approved.
- Exhibit D.7
  - o Plaintiff responding to HR with Cox statement-all Sales Enablement are Telework/Hybrid.  Nothing has changed.
- Exhibit D.8
  - o 9/22/2021- HR emails re originally approving some RARs cause could work 100% remote, now change?
- Exhibit D.9
  - o 9/22/2021-HR emails re have just been instructed to rescind approvals allowing employees to work remotely-will Edgar be allowed religious accommodation?
- Exhibit D.10
  - o 9/10/2021- Email with HR, RAR for Edgar; he can work 100% remotely.
- Exhibit D.11
  - o **IMPORTANT-**HR Justin Farmer explains how RARs treated different than others; MUST HAVE SPECIFIC TASKS THAT CANNOT BE DONE FROM HOME. Looking to rescind approvals-employees can go through EDR appeal.

## **Exhibit E**

Employment Dispute Resolution Documents ("EDR")

- Exhibit E.1
  - o 9/29/2021 Denial of EDR Process; Plaintiff's questions of denial, notes, and no acknowledgement of RAR.
- Exhibit E.2
  - o 10/1/2021 Acknowledgement of Request to Proceed to Next Step of EDR; 10/6/2021 UPS confirm of previous denial of EDR process.
- Exhibit E.3
  - o 9/30/2021-Plaintiff's statement of disagreement to end EDR process; Request to proceed to next step, requested many times reasons RAR denied-no answers given.

**Exhibit F**

Verified TimeLine of Events

**Exhibit G**

Vaccine Medical Consequences Documents

- Exhibit G.1
  - o  NIH Adverse Effects of COVID-19 Vaxes
- Exhibit G.2
  - o  Vaccine Death Report Sept. 2021

**Exhibit H**

Amicus Brief

**Exhibit I**

AJC-UPS Exempts Front-Line Workers from Vax Mandate-August 16, 2021

**Exhibit J**

Plaintiff's Notes re Vaccine Inconsistently Applied

**Exhibit K**

- Exhibit K.1
  - o  UPS supports distribution as part of Operation Warp Speed
- Exhibit K.2
  - o  UPS Partners with McKesson

**Exhibit L**

NYT:  US Commits to Buying Millions of Vaccine Doses.

**Exhibit M**

UPS Earnings and Profit Info

**Exhibit N**

Biden Speech, September 9, 2021

**Exhibit O**

BST Holdings vs. OSHA 5th Circuit Case

**Exhibit P**

Biden Fact Sheet, July 29, 2021

**Exhibit Q**

- Exhibit Q.1
    - ICAN: CDC V-Safe Data
- Exhibit Q.2
    - VAERS Summaries
- Exhibit Q.3
    - CDC VAERS Results

**Exhibit R**

Doctors Hospital v. Alicea

**<u>Exhibit S</u>**

DOL Unemployment Denial

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

PAULETTA JOHNSON                    *

                                    *

     Plaintiff,                    *      Civ. Action File No._____

v.                                  *      **JURY TRIAL DEMANDED**

UNITED PARCEL SERVICE, INC.,
and UPS CAPITAL INSURANCE           *
AGENCY, INC.
                                    *

     DEFENDANTS
_____   *


**PLAINTIFF PAULETTA JOHNSON'S**

**VERIFICATION OF FACTS CONTAINED IN COMPLAINT AND OF
AUTHENTICITY OF DOCUMENTS PROVIDED IN EXHIBITS.**


I, Pauletta Johnson, under penalty of perjury, hereby  affirm under oath that:

I am the Plaintiff in the captioned action, am over 21 years old, and have the

capacity to make this Verification. I have personal knowledge as stated below:

I have reviewed the facts asserted in the Complaint describing my

circumstances with Defendants and they are true and correct.

I have reviewed the documents and emails that are Exhibits to this Complaint, The TimeLine of Events (Exhibit F) and my Notes regarding Vaccine inconsistency (Exhibit J) and all other documents that appear to be emails or other documents prepared by or provided by me or UPS, and these  are true and correct copies of what they purport to be and were made in the ordinary course of business.

All other Exhibits attached are true copies of what they purport to be, whether they be articles from the newspaper or internet.  I do not necessarily have personal knowledge of all of the contents of these, but I believe them all to be authentic and true and are so as far as I know.

I affirm under oath and penalty of perjury that the foregoing is true and correct.

This 5th day of February 2023.



Paulette Johnson

2